**Homer T. FUESTON and Evelyn Fueston, Appellants,**

v.

**BURNS AND McDONNELL ENGINEERING COMPANY, INC., Respondents.**

**No. WD 47786.**

Missouri Court of Appeals, Western District.

May 3, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 28, 1994.

Scott W. Mach, Kansas City, for appellants.

Jerome V. Bales, Kansas City, for respondents.

Before BERREY, C.J., and BRECKENRIDGE and SMART, JJ.

BRECKENRIDGE, Judge.

Homer T. Fueston and Evelyn Fueston appeal from a summary judgment granted in favor of Burns and McDonnell Engineering Company, Inc., (Burns and McDonnell) in a personal injury action brought by the Fuestons against the engineering company. The trial court granted summary judgment upon finding that no genuine issues of material fact existed and that Burns and McDonnell was entitled to judgment as a matter of law ·based upon the ten-year statute of repose contained in § 516.097, RSMo 1986.[1] The Fuestons raise one issue on appeal, contending that the trial court erred in granting summary judgment because genuine issues of material fact existed with respect to (a) what constituted the "improvement" under § 516.097, (b) whether Burns and McDonnell had "completed" the improvement within the ten-year period prior to the accident in accordance with § 516.097, and (c) whether there had been concealment of the alleged defect. The Fuestons maintain that such issues were material to the ultimate determination of the motion for summary judgment submitted by Burns and McDonnell and that the trial court failed to properly consider the evidence in the light most favorable to the Fuestons. The summary judgment is affirmed.

On February 10, 1990, Homer T. Fueston was injured while performing maintenance work on a thirty-five-ton crane in a building of his employer, Armco, Inc., (Armco) known as the "No. 2 Melt Shop." Mr. Fueston asserts that at the time of his injury he was on the trolley of the crane when the crane began to move. He allegedly slipped on grease and oil on the deck of the trolley, and his head became wedged between the top railing of the crane trolley and an overhead support beam. As a result, Mr. Fueston maintains that he sustained massive head injuries.

Mr. Fueston and his wife, Evelyn Fueston, subsequently filed a petition for damages against Victor R. Browning & Co., Inc., the company which manufactured the crane, and Burns and McDonnell, the company which provided engineering services for the design of the No. 2 Melt Shop, including the surrounding structure for the crane.[2] The petition for damages consisted of three counts: Count I, Product Liability; Count II, Negligence; and Count III, Loss of Services. The specific claims asserted against Burns and McDonnell included the following:

Count I

4. [T]hat Burns and McDonnell has in the past and continues to this day to supply engineering services to Armco Steel Co. of Kansas City, Missouri, including engineering safety services for the crane which injured plaintiff Homer Fueston.

Count II

12. That defendant Burns and McDonnell is in the business of providing engineering and design work for Armco Steel Co.

13. That defendant Burns and McDonnell has had supervisory authority and responsibility for providing safety and design engineering to Armco Steel Co. in the past and continues to provide such services to the present date.

14. That defendant Burns and McDonnell provided engineering services for the design and placement of the overhead crane

---

1. All statutory citations are to Revised Missouri Statutes 1986, unless otherwise indicated.

2. The Fuestons dismissed without prejudice their petition against Victor R. Browning & Co., Inc., at the time the trial court heard Burns and McDonnell's motion for summary judgment.

identified in Count I and continues to provide safety engineering for the areas of the Armco Steel Co., including the area where plaintiff Homer T. Fueston was injured on February 10, 1990.

15. That defendant Burns and McDonnell was negligent and careless in the following respects, to-wit:

a. In allowing the 35–ton crane involved in plaintiff's accident to be installed without adequate head room between the top railing on the trolley and the overhead support trusses;

b. In failing to provide adequate warnings on the 35–ton crane involved in plaintiff's accident;

c. In failing to advise Armco Steel Co. and employees concerning the safe operation of the crane;

d. In its on-going capacity as a safety consultant in failing to recognize the dangers of the operation of the crane with the small clearance between the top railing of the trolley and the overhead trusses;

e. In failing to recognize and develop corrective actions for the problem of grease and oil collection on the trolley, making a slipping hazard; and

f. In failing to provide crane trollies with low clearance to be identified with warning signs, warning of said low clearance.

Burns and McDonnell filed an answer to the Fuestons' petition in which the company admitted that it had performed engineering services, including design work, for Armco and admitted that it had provided certain engineering services with respect to the No. 2 Melt Shop, but denied all other allegations of fact and conclusions of law contained in paragraphs 4 and 12–15 of the petition. Burns and McDonnell further asserted as an affirmative defense that the Fuestons' claims were barred by the ten-year statute of repose set forth in § 516.097, which provides in part:

1. Any action to recover damages for personal injury, property damage or wrongful death arising out of a defective or unsafe condition of any improvement to real property, including any action for contribution or indemnity for damages sustained on account of the defect or unsafe condition, shall be commenced within ten years of the date on which any such improvement is completed.

2. This section shall only apply to actions against any person whose sole connection with the improvement is performing or furnishing, in whole or in part, the design, planning or construction, including architectural, engineering or construction services, of the improvement.[3]

During the initial discovery conducted in this litigation, Burns and McDonnell propounded interrogatories to the Fuestons in which the engineering company asked the Fuestons to identify the persons having knowledge of any allegation contained in paragraphs 4, 13, and 14 of the petition for damages. In response to the interrogatory questions, the Fuestons identified only Alan Niebrugge, an Armco employee. Mr. Niebrugge had been the manager of engineering services for Armco since 1991, the works engineer at Armco from 1984 to 1991, and a senior civil engineer there from 1974 through 1984.

Burns and McDonnell then filed a motion for summary judgment against the Fuestons, alleging that there were no material issues of fact and that it was entitled to summary judgment in its favor on the basis of the ten-year statute of repose contained in § 516.097. In support of its motion, Burns and McDonnell submitted the affidavit of Mr. Niebrugge, as well as the affidavits of John Hoffman and Gerald Sidebottom, two Burns and McDonnell employees who were the project managers responsible for the initial design of the No. 2 Melt Shop and all subsequent expansions or modifications of the melt shop.[4]

---

3. A statute of repose is not to be confused with a statute of limitations. "A statute of limitations allows the cause of action to accrue and then cuts off the claim if suit is not filed within a certain period of time. A statute of repose eliminates the cause of action altogether after a certain period of time following a specified event;

in this instance, the completion of construction." *Blaske v. Smith & Entzeroth, Inc.*, 821 S.W.2d 822, 834 (Mo. banc 1991).

4. At the time affidavits were made, Mr. Hoffman was the vice president of Burns and McDonnell, a position he had held since 1981. Employed by

In the statement of facts portion of its suggestions, Burns and McDonnell, citing the affidavits of Messrs. Niebrugge, Hoffman, and Sidebottom, stated that the engineering company "was hired by Armco with respect to the design of the No. 2 Melt Shop, and it provided plans and specifications for it, including the surrounding structure for the 35-ton crane which was involved in the Fueston accident." However, the company noted that the No. 2 Melt Shop, into which the crane was incorporated as a permanent fixture, was completed in early 1977 and began to produce steel billets in April of 1977. Thus, "[t]he plaintiff's accident occurred more than ten (10) years after completion of the improvement known as the No. 2 Melt Shop, which included the 35-ton crane in question."

Burns and McDonnell further stated, with the three affidavits as authority, that the company "has not provided any engineering safety services with respect to the crane ... [or the] No. 2 Melt Shop" and "has not acted as a safety consultant, or an ongoing safety consultant, to Armco at any time in the past." Although the company admitted providing engineering services with respect to unrelated subsequent projects in different areas of the No. 2 Melt Shop since the completion of the melt shop, the company maintained that "the only services relating to the crane in question, or the area where Fueston was injured, were provided at the time of the original construction of the building from 1974 to 1977." According to the affidavits, the crane and the area where Mr. Fueston was injured had not been remodeled or structurally altered since 1977.

The Fuestons filed suggestions opposing Burns and McDonnell's motion for summary judgment, contending that summary judgment would be improper because a genuine issue of material fact existed as to whether the "improvement" known as the No. 2 Melt Shop was "completed" in 1977 as Burns and McDonnell asserted. In their suggestions, the Fuestons admitted that the crane and the area where Mr. Fueston was injured had not

been remodeled or structurally altered since 1977, but argued that the No. 2 Melt Shop was not "completed" for purposes of § 516.-097 in 1977. Rather, the Fuestons contended that "Burns and McDonnell continued to work on the No. 2 melt shop at Armco Steel, the 'improvement' under the statute, all the way up until 1991." As support for this argument, the Fuestons cited the affidavit of Mr. Fueston, in which he attested in part:

11. Burns and McDonnell's work at Armco was ongoing from 1975 when I began until after I was injured. The No. 2 meltshop was not completed and to this date, all of the work in the No. 2 meltshop is still not complete. Armco Steel has an ongoing contractual relationship with Burns and McDonnell to provide engineering and architectural design services, and the work continues on the No. 2 meltshop, the area where I was hurt, as of this date.

12. The No. 2 meltshop is a single structure which had work begun on it in approximately 1974 or 1975. It has had continued upgrading and work done on it with the *engineering work done by Burns and McDonnell since the time it was begun, and to date, all of the No. 2 meltshop is still incomplete.*

As proof that the No. 2 Melt Shop was not complete, the Fuestons also noted the statement of Mr. Niebrugge in his deposition for Mr. Fueston's companion worker's compensation case that Armco had an "overall blanket contract" with Burns and McDonnell at the current time, similar to one it had with the engineering firm in the mid-1970's. In addition to the affidavit of Mr. Fueston and the deposition of Mr. Niebrugge, the Fuestons attached to their suggestions proposals, purchase orders, and a standard performance contract dealing with services provided to Armco by Burns and McDonnell after 1977. The Fuestons argued that the documents proved that Burns and McDonnell continued after 1977 to work on the No. 2 Melt Shop, which the Fuestons claimed Burns and

Burns an McDonnell for thirty-six years, Mr. Hoffman had been a senior project manager at the engineering company from 1973 to 1981, during which time he was the project manager for the initial design of the No. 2 Melt Shop. Mr.

Sidebottom had been a project manager at Burns and McDonnell for twenty years. He was the project manager on all subsequent projects that involved the No. 2 Melt Shop.

McDonnell conceded was the "improvement" under the statute, such that the Fuestons' claims were not barred by the statute of repose.

A hearing was held on the summary judgment motion. Mr. Niebrugge testified at the hearing, and the Fuestons presented an additional argument against summary judgment, asserting the applicability of the concealment exception to the statute of repose, § 516.097.-4(2). Following the hearing, the trial court entered an order granting summary judgment to Burns and McDonnell. The trial court found that there were no genuine issues of material fact and that Burns and McDonnell was entitled to judgment as a matter of law based upon the ten-year statute of repose contained in § 516.097. Specifically noting that the Fuestons did not dispute the fact that the crane and surrounding structure had not been structurally altered or modified in any way since originally built in 1977, the trial court interpreted the term "improvement" to mean the crane and surrounding structure, not the No. 2 Melt Shop in its entirety. The trial court stated that to hold otherwise would render the statute of repose meaningless, "since most buildings are changed from time to time, and therefore they would never be 'completed' within the meaning of the statute." The trial court found that the crane and surrounding structures "were completed for the purposes of R.S.Mo. 516.097 upon the termination of construction and when Armco took possession of the building and began to use the crane," which occurred "no later than 1977." The court also found no evidence of concealment within the meaning of § 516.097.4(2), and concluded that the Fuestons' claims were barred by the statute of repose. The Fuestons now appeal the grant of summary judgment.

The Fuestons raise a single point on appeal, contending that the trial court erred in granting summary judgment because genuine issues of material fact existed with respect to (a) what constituted the "improve-ment" under § 516.097, (b) whether Burns and McDonnell had "completed" the improvement within the ten-year period prior to the accident in accordance with § 516.097, and (c) whether there had been concealment of the alleged defect.[5] The Fuestons maintain that such issues were material to the ultimate determination of the motion for summary judgment submitted by Burns and McDonnell and that the trial court failed to properly consider the evidence in the light most favorable to the Fuestons.

■ Upon appeal from a summary judgment, this court reviews the record in the light most favorable to the party against whom judgment was rendered. *ITT Commercial Finance v. Mid–Am. Marine*, 854 S.W.2d 371, 376 (Mo. banc 1993). Facts supporting a party's motion for summary judgment, either set forth by affidavit or otherwise, are taken as true unless contradicted by the non-moving party's response to the motion. *Id.* This court will accord the non-moving party·the benefit of all reasonable inferences from the record. *Id.*

The standard for appellate review of a summary judgment is de novo. *Id.* This court's criteria for ascertaining the propriety of summary judgment are the same as those used by the trial court when determining the propriety of sustaining the motion initially. *Id.* Summary judgment is appropriate if "a motion for summary judgment and response thereto show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 74.04(c)(3). "The key to summary judgment is the undisputed right to judgment as a matter of law. . . ." *ITT*, 854 S.W.2d at 380.

### A. Improvement

The trial court interpreted the term "improvement" in § 516.097 to mean the crane and surrounding structure. The Fuestons allege that the No. 2 Melt Shop in its entire-

---

5. The Fuestons do not dispute on appeal that Burns and McDonnell's sole connection with both the No. 2 Melt Shop and the crane and surrounding structure was in "performing or furnishing, in whole or in part, the design, planning or construction, including architectural, engineering or construction services" of the melt shop and crane area, as is required in order for § 516.097 to apply.

ty and not the crane itself is the "improvement" for purposes of the statute of repose. The Fuestons argue that the issue of what constitutes the "improvement" under § 516.-097 "is a moot point because Burns and McDonnell in fact admitted that the improvement was the No. 2 meltshop." In the alternative, the Fuestons contend that "*at least* a genuine issue of material fact exists as to what the improvement is in this case."

No Missouri court has defined the term "improvement" as it is used in § 516.097. *Hayslett v. Harnischfeger Corp.*, 815 F.Supp. 1294, 1296 (W.D.Mo.1993). The Missouri Supreme Court has, however, defined the term within the context of interpreting other Missouri statutes as " '[a] permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs.' " *Id.* (quoting *State v. Neill*, 397 S.W.2d 666, 669 (Mo. banc 1966)). This definition is identical to that applied by other jurisdictions defining the term in the context of statutes of repose similar to § 516.097. *See, e.g., Adair v. Koppers Co., Inc.*, 741 F.2d 111, 114 (6th Cir. 1984); *Sartori v. Harnischfeger Corp.*, 432 N.W.2d 448, 451 (Minn.1988).

The Missouri Supreme Court has held, without discussion, that a component of an improvement to real property, specifically a central air handling unit, is itself an improvement. *Blaske v. Smith & Entzeroth, Inc.*, 821 S.W.2d 822, 836 (Mo. banc 1991). Other jurisdictions with comparable statutes of repose have also found components of improvements to be improvements. *See, e.g., Adair*, 741 F.2d 111, 116 (conveyor which was part of coal handling system at coke plant was "an improvement to real property" under Ohio statute of repose); *Sartori*, 432 N.W.2d 448, 452 (overhead rail crane installed in mining facility treated as "an improvement to real property" under Minnesota statute of repose); *Mullis v. Southern Co. Services, Inc.*, 250 Ga. 90, 296 S.E.2d 579, 584 (1982) (air circuit breaker, an essential component of power plant's electrical system, found to be "an improvement to real property" under Georgia statute of repose); *Sette v. Benham,*

*Blair & Affiliates,* 70 Ohio App.3d 651, 591 N.E.2d 871, 873 (1991) (can cleaning system in a can manufacturing plant, designed at the same time as, and as part of, the total plant, held to be an improvement to real property for purposes of the statute of repose); *Stanske v. Wazee Elec. Co.*, 690 P.2d 1291, 1293 (Colo.App.1984), *aff'd,* 722 P.2d 402 (Colo.1986) (indicator light which was part of the electrical system of a grain elevator's distribution system held to be "an improvement to real property" within the meaning of special Colorado statute of limitations). These jurisdictions have generally found that if a component of an improvement "is an essential or integral part of the improvement to which it belongs, then is itself an improvement to real property." *Mullis,* 296 S.E.2d at 584. *See also, Sette,* 591 N.E.2d at 873; *Stanske,* 690 P.2d at 1293.

In the instant case, there appears to be no question that the No. 2 Melt Shop is an improvement to real property and that the crane is a component of the melt shop. In determining whether the crane and surrounding structure constitute an improvement to real property, this court notes that the thirty-five-ton crane was installed as a permanent fixture in the No. 2 Melt Shop. A trolley was constructed above the crane. The crane's installation involved the expenditure of both labor and money, as Burns and McDonnell was employed by Armco to design the No. 2 Melt Shop. Burns and McDonnell provided plans and specifications for the melt shop, including the surrounding structure for the crane. The crane and its surrounding structure were part of the original melt shop project, and thus are distinguishable from "ordinary repairs." The crane was an integral part of the melt shop, as it ran the entire length of the melt shop above a cooling bed on tracks. The crane itself therefore qualifies as an improvement to real property. *See Hayslett,* 815 F.Supp. at 1298; *Mullis,* 296 S.E.2d at 584; *Sette,* 591 N.E.2d at 873.

The Fuestons do not contend that the crane is not an improvement. Rather, they direct this court's attention to the following statement made by Burns and McDonnell in the company's suggestions in support of its

motion for summary judgment: "The plaintiff's accident occurred more than ten (10) years after completion of the improvement known as the No. 2 Melt Shop, which included the 35–ton crane in question." The Fuestons argue that the statement constitutes an admission by Burns and McDonnell that the No. 2 Melt Shop was the improvement for purposes of the statute of repose.

This court does not share the Fuestons' interpretation of the statement. The statement does not rule out the possibility that the crane is *also* an improvement and is the relevant improvement under § 516.097 as the statute is applied in this case. Furthermore, neither party's characterization of the status of the crane as an improvement or a non-improvement is relevant "since only a court can make that determination as a matter of law." *Adair*, 741 F.2d at 114. *See also Blaske*, 821 S.W.2d at 836.

Although the No. 2 Melt Shop is an improvement to real property, the crane itself and surrounding structure also constitute an improvement to real property. Because all of the Fuestons' claims of negligence on the part of Burns and McDonnell concern the company's action regarding the crane and structure surrounding the crane, the crane with its surrounding structure is the relevant "improvement to real property" for purposes of applying § 516.097. The Fuestons have failed to set forth facts to contradict the conclusion that the crane is the "improvement" under § 516.097; therefore, no genuine issues of material fact exist as to what constitutes the "improvement" for purposes of imposing the statute of repose.

### B. Completion

■ The Fuestons argue that a genuine issue of fact exists as to whether the No. 2 Melt Shop was completed within the ten-year period prior to Mr. Fueston's accident. Because the crane with surrounding structure is the improvement alleged by the Fuestons to be defective or unsafe, however, it is the date on which the crane and surrounding structure were completed that is relevant to the

determination of whether § 516.097 bars the Fuestons' claims. The Fuestons admitted in their suggestions in opposition to the summary judgment motion of Burns and McDonnell that "[s]ince 1977 the crane and the area where Fueston was injured have not been remodeled or structurally altered."[6] Mr. Niebrugge testified without contradiction that Armco took occupancy of the melt shop, which included the crane and surrounding structure, and the melt shop began billet production in 1977. The crane and surrounding structure were therefore indisputably "completed" for purposes of § 516.097 in 1977. *See Magee v. Blue Ridge Professional Bldg.*, 821 S.W.2d 839, 844 (Mo. banc 1991).

### C. Concealment

As their final subpoint, the Fuestons maintain that a genuine issue of material fact exists with respect to whether the claimed defect which allegedly caused injury to Mr. Fueston was concealed. Pursuant to § 516.-097.4(2), the statute of repose will not apply if Burns and McDonnell concealed any defect or deficiency in the design, planning, or construction of the crane or surrounding structure:

4. This section shall not apply if:

>     .      .      .      .      .
>
> (2) A person conceals any defect or deficiency in the design, planning or construction, including architectural, engineering or construction services, in an improvement for real property, if the defect or deficiency so concealed directly results in the defective or unsafe condition for which the action is brought. . . .

■ The Fuestons raised the issue of concealment for the first time during the hearing on Burns and McDonnell's motion for summary judgment. Their argument appears to be that because it was difficult to see the amount of clearance between the trolley above the crane and the support beam from the floor of the No. 2 Melt Shop, the amount of clearance was "concealed." As proof that a genuine issue of material fact

---

6. This statement was made in paragraph twenty of the statement of facts section of Burns and McDonnell's suggestions in support of their motion for summary judgment. The Fuestons indicated their agreement with this paragraph in their suggestions in opposition.

existed as to whether Burns and McDonnell concealed a defect in the design of the No. 2 Melt Shop, the Fuestons cite testimony by Mr. Niebrugge that indicates he "did not notice any defect in the design of the building." The Fuestons, however, mistakenly equate a concealed defect to a latent defect. *Id.* at 844. "The use of the word 'conceals' in the statute indicates an affirmative act, something actually done directly intended to prevent discovery or to thwart investigation." *Id.* As in *Magee*, there is no indication or allegation in either the pleadings or record in the instant case that Burns and McDonnell affirmatively concealed any alleged defect. Thus, no genuine issue of material fact as to whether the engineering concealed a defect or deficiency in the design, planning or construction of the No. 2 Melt Shop ˙or the structure surrounding the crane existed.

Burns and McDonnell raised the statute of repose contained in § 516.097 as an affirmative defense to the Fuestons' claims. The engineering company made a prima facie showing of the right to judgment as a matter of law by establishing that there was no genuine dispute as to the existence of each of the facts necessary to support their defense. *ITT,* 854 S.W.2d at 381. Specifically, Burns and McDonnell showed that there was no genuine dispute that the crane, the structure alleged to be defective, was an improvement to real property; that the company's only connection to the improvement was in the design of the structures surrounding it; and that the improvement was completed more than ten years prior to the commencement of the Fuestons' action. The burden then shifted to the Fuestons to set forth specific facts showing that there was a genuine issue for trial. *Id.* Despite the Fuestons' claims to the contrary, the evidence, even when viewed in the light most favorable to them, revealed that no genuine issues of material fact exist with respect to what constituted the "improvement" under § 516.097, when the improvement was "completed," and whether any alleged defect in the improvement was "concealed." Burns and McDonnell established the right to judgment as a matter of

law, and the trial court correctly granted summary judgment in this case.

The judgment of the trial court is affirmed.

All concur.