Wendy SCHELP, Appellant,

v.

COHEN–ESREY REAL ESTATE
SERVICES, INC.,
Respondent.

No. WD 47847.

Missouri Court of Appeals,
Western District.

Oct. 4, 1994.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Nov. 29, 1994.

Application to Transfer Denied
Jan. 24, 1995.

David E. Larson, Kristine S. Focht, Watson, Ess, Marshall & Enggas, Kansas City, J. Kirk Rahm, Warrensburg, for appellant.

John E. Turner, Hanover & Turner, Kansas City, for respondent.

Before SMART, P.J., and KENNEDY and ULRICH, JJ.

ULRICH, Judge.

Cohen–Esrey Real Estate Services, Inc. (Cohen–Esrey), appeals from the judgment of $400,000 in favor of Wendy Schelp, following jury verdict, for injuries she sustained during an attack by an unknown intruder while she was reposed in the apartment in Warrensburg that she had leased from Cohen–Esrey. Cohen–Esrey claims eight points of error on appeal. Only point (1) is addressed because it is dispositive. Cohen–Esrey claims that the trial court erred in overruling its motion j.n.o.v. because it had no duty to protect Ms. Schelp from deliberate criminal attack by an unknown assailant.

The judgment is reversed.

While asleep in the early morning hours of June 27, 1990, in the apartment she had rented from Cohen–Esrey, Wendy Schelp was awakened by an intruder. Almost immediately after awakening, she was struck in her face by the intruder wielding a bottle, causing injury. Ms. Schelp did not see the intruder well enough to identify the person. The assailant ran from the apartment. Ms. Schelp ambulated to the front door of the apartment, leaned against it, and the door clicked shut. She opened the door and proceeded to a neighbor's apartment within the apartment complex. The police were called.

When the assault occurred, the front door lock of Ms. Schelp's apartment was not a part of the apartment complex master key system. Only three people possessed keys to the front door lock: Ms. Schelp, her sister, Kelly, and Tina Keith, Cohen–Esrey's manager at the apartment complex. Ms. Keith kept the key to the front door of Ms. Schelp's apartment in her purse and not in the key closet in her office located at the apartment complex.

During trial, Ms. Keith testified that she was aware of an occurrence where an unknown person entered the apartment of Ms. Schelp's sister within the apartment complex before Ms. Schelp became a resident. The intruder had surreptitiously set ahead clocks within the apartment, untied ribbons on stuffed animals, opened an umbrella, and hung a pair of underwear on the umbrella. On other occasions, a telephone list and bras were covertly removed from the same apartment.

Ms. Keith also testified that on two occasions before Ms. Schelp was assaulted, two unauthorized nonforced entries of Ms. Schelp's apartment had occurred. During the first instance, a bra, other underwear, and possibly a slip, were removed from the apartment. During the second clandestine instance, the items taken during the first occurrence were returned to the apartment.

Several witnesses testified that a maintenance man employed by Cohen–Esrey to work at the apartment complex had entered their apartments without authorization or prior notice before the date Ms. Schelp was attacked. A former occupant of the apartment complex testified about an occasion when shortly after she finished showering and was wrapped in a towel the maintenance man appeared in her apartment without authorization or notice of entry. She also testified that the maintenance man had entered her apartment on other occasions without prior notice to perform maintenance work. Another former resident testified that the maintenance man demonstrated to her how to enter through the locked front door of an apartment at the complex using a credit card. Still another former resident of the apartment complex testified that the maintenance man had entered her apartment on one occasion without prior authorization or notice.

Ms. Schelp testified that prior to the assault, she observed the same maintenance man in her apartment twice. On one occasion, shortly after she took a shower, the maintenance man entered her apartment without notice. On another occasion he entered her apartment to change a furnace filter without giving prior notice of his entry. Ms. Schelp stated that she had informed Tina

Keith, apartment manager, that she was concerned about the maintenance man and what she believed to be his abnormal interest in her.

Ms. Schelp and her sister moved to the apartment in which the assault would later occur, and the lock to the front door was changed. Following the second unforced entry into the apartment, when the stolen undergarments were returned, Tina Keith hired an outside locksmith to install new locks on the front door of the apartment. These locks were not part of the master key system. Only Ms. Schelp, her sister, and Ms. Keith had keys to these locks. When the locks to the apartment were changed, Cohen–Esrey, through its manager, agreed that no employee of Cohen–Esrey would be allowed to enter the apartment without advance notice to Ms. Schelp and her authorization, and that Tina Keith would be in attendance when Cohen–Esrey employees were in the apartment.

When the assault occurred, three locks were on the front door of Ms. Schelp's apartment and a single lock was on the sliding glass door which opened onto a second story porch. The locks on the front door consisted of a doorknob lock, a dead bolt lock, and a chain lock. The sliding glass door to the second story apartment was the only other door of entry into the apartment. Additional pin locks had been installed on the sliding glass doors of every apartment at the complex in the summer of 1989, but, according to the testimony of an investigating police officer, a pin lock had not been installed on the sliding glass door to Ms. Schelp's apartment. Ms. Schelp testified that before retiring on June 26, 1990, she locked the door knob and the dead bolt locks on the front door to her apartment. She did not lock the chain lock. Her sister was not in the apartment when she retired, and she believed that her sister might return home that night. She also locked the sliding glass door to her apartment when she went to bed.

After receiving a telephone call at 11:00 p.m. the evening of June 26, 1990, during which she talked for approximately thirty minutes, Ms. Schelp slept. She was awakened by the intruder who struck her head with a bottle and ran from the apartment.

The jury rendered its verdict in favor of Ms. Schelp, judgment was entered, and the defendant appealed.

In its first point, Cohen–Esrey claims that the trial court erred "in overruling defendant's motion for judgment notwithstanding the verdict because, as a matter of law, defendant had no duty to protect plaintiff from the deliberate criminal attack by an unknown assailant in that the evidence established no special facts or circumstances or any other recognized exception to the general rule that a landlord is not responsible for criminal attacks on its tenants."

In determining whether the trial court should have directed a verdict or granted a judgment notwithstanding the verdict, the evidence is viewed in the light most favorable to Ms. Schelp, giving her the benefit of all reasonable inferences and ignoring Cohen–Esrey's contrary evidence except as it aids Ms. Schelp's case. *Southwestern Bell Yellow Pages v. Robbins,* 865 S.W.2d 361, 365 (Mo.App.1993). Withdrawing a case from the jury is a drastic measure which should not be taken unless reasonable minds, exercising fair and impartial judgment, would not differ on the issues. *Id.* A jury's verdict must not be set aside unless there is a complete absence of probative facts to support the jury's verdict. *Id.* at 366.

Ms. Schelp, to recover for negligence, must establish the elements of a negligence claim—that is, duty, breach of duty, causation, and damages. *Virginia D. v. Madesco Inv. Corp.,* 648 S.W.2d 881, 886 (Mo. banc 1983). At issue in this point is whether Cohen–Esrey had a duty to protect Ms. Schelp from an unknown assailant's deliberate criminal attack.

Generally, one person owes no duty to protect another person from deliberate criminal attack by a third person. *Stubbs v. Panek,* 829 S.W.2d 544, 546 (Mo.App.1992). However, some obligations are imposed upon a party to protect others against deliberate criminal attack by a third party. *Keenan v. Miriam Found.,* 784 S.W.2d 298, 302 (Mo. App.1990). These obligations emanate from "special relationships" or "special facts and circumstances," such that an act or omission

exposes a person to an unreasonable risk of harm through the conduct of another. *Meadows v. Friedman R.R. Salvage Warehouse,* 655 S.W.2d 718, 721 (Mo.App.1983). Additionally, obligation can result from a landlord's duty to exercise ordinary care to keep those portions of the premises that it retains in its control in a reasonably safe condition for the use intended. *Nenninger v. Oran Life Tabernacle Church,* 789 S.W.2d 530, 532 (Mo.App.1990).

■ "Special relationships" include those situations where a party entrusts himself to the protection of another and relies upon that person to provide a place of safety. *Nappier v. Kincade,* 666 S.W.2d 858, 861 (Mo.App. 1984). The landlord-tenant relationship is not a "special relationship." *Faheen v. City Parking Corp.,* 734 S.W.2d 270, 272 (Mo.App. 1987). Therefore, Cohen–Esrey did not have a duty to protect Ms. Schelp solely because of the landlord-tenant relationship that existed between the parties.

■ The "special facts and circumstances" exception includes two theories: (1) an intentional infliction of injury by known and identifiable third persons; or (2) frequent and recent occurrences of *violent* crimes against persons on the premises by unknown assailants. *Claybon v. Midwest Petroleum Co.,* 819 S.W.2d 742, 744–45 (Mo.App.1991). The only difference between these two theories is the knowledge of the identity of the offender. *Faheen v. City Parking Corp.,* 734 S.W.2d at 274.

Under the first theory, a duty may result when a person, known to be violent, is on the premises, or an individual is present who has acted in such a way as to indicate danger, and sufficient time exists to prevent injury. *Id.* at 273. The identity of the person who attacked Ms. Schelp is unknown. Therefore, the first theory is inapplicable.

■ The second theory, known as the "violent crimes" exception, imposes a duty on a landowner when the following elements exist: (1) a relationship between plaintiff and defendant, such as landlord and tenant; (2) prior specific incidents of *violent* crimes on the premises that are sufficiently numerous and recent to put a defendant on actual or constructive notice that third persons are likely to endanger the safety of tenants; and (3) sufficient similarity between the incident causing the injury and prior specific incidents of violent crimes occurring on the premises to prompt a reasonable person to take precautions to protect the plaintiff from that activity. *Id.* at 273–74.

Evidence of prior violent crimes has invoked the "special facts and circumstances" rule in Missouri. *See Madden v. C & K Barbecue Carryout, Inc.,* 758 S.W.2d 59 (Mo. banc 1988); *Miller v. South County Center, Inc.,* 857 S.W.2d 507 (Mo.App.1993); *Mulligan v. Crescent Plumbing Supply Co., Inc.,* 845 S.W.2d 589 (Mo.App.1992); *Claybon v. Midwest Petroleum Co.,* 819 S.W.2d 742 (Mo. App.1991); *Keenan v. Miriam Found.,* 784 S.W.2d 298 (Mo.App.1990); *Faheen v. City Parking Corp.,* 734 S.W.2d 270 (Mo.App. 1987); *Vorbeck v. Carnegie's at Soulard, Inc.,* 704 S.W.2d 296 (Mo.App.1986); *Brown v. National Supermarkets, Inc.,* 679 S.W.2d 307 (Mo.App.1984); *Nappier v. Kincade,* 666 S.W.2d 858 (Mo.App.1984). In this case, no prior specific instances of violent crimes are evident. Evidence of prior crimes was presented, but all of the prior crimes were nonviolent. Therefore, if violent crimes must be demonstrated to invoke the "special circumstances" rule, the "violent crimes" exception is inapplicable.

Ms. Schelp argues that, as a matter of law, a showing of prior violent attacks is no longer required in Missouri to impose liability upon a landlord. In support of her position, Ms. Schelp relies upon dicta in *Becker v. Diamond Parking, Inc.,* 768 S.W.2d 169 (Mo. App.1989), to the effect that the Supreme Court's decision in *Madden v. C & K Barbecue Carryout, Inc.,* 758 S.W.2d 59 (Mo. banc 1988), essentially changed the focus of premises liability cases from the special circumstances and special relationship criteria to what is foreseeable. This identical argument was made and rejected in *Miller v. South County Center, Inc.,* 857 S.W.2d 507 (Mo. App.1993). The Eastern District, in analyzing both *Becker* and *Madden,* stated:

> Although the court in *Becker* did express the view that *Madden* 'changed the focus of premises liability cases from the special

circumstances and special relationship criteria to the concept of what is foreseeable,' such discussion is mere *dicta* and, in our view, is not supported by the court's discussion or holdings in *Madden*. In fact, the cases subsequent to *Madden* have uniformly required a showing of prior criminal incidents before a duty upon a business owner to protect or warn its invitees will be imposed as a matter of law. *See, e.g., Keesee v. Freeman*, 772 S.W.2d 663, 669 (Mo.App.1989); *Keenan v. Miriam Found.*, 784 S.W.2d 298, 303 (Mo.App. 1990); *Claybon v. Midwest Petroleum Co.*, 819 S.W.2d 742, 747 (Mo.App.1991).

Further analysis of *Madden* is helpful. In *Madden*, the Supreme Court examined three sources to determine whether the plaintiff alleged sufficient facts to establish that the defendant had a duty of care. The Court determined that the defendant owed a duty of care consistent with the holdings in *Virginia D. v. Madesco Investment Corp.*, 648 S.W.2d 881 (Mo. banc 1983); *Brown v. National Supermarkets, Inc.*, 679 S.W.2d 307 (Mo.App.1984), and *Restatement (Second) of Torts, Section 344, Comment f.* In *Virginia D.* and *Brown*, the courts recognized that business owners had a duty to protect business invitees from criminal attacks by unknown third persons. The facts and circumstances of each of those cases were determinative of the imposition of the duty on the business owners, the Court reasoned. The Court in *Madden* said:

> In *Brown* ... sixteen reported robberies involving firearms, seven reported strong arm robberies, and 136 other reported crimes allegedly occurring on the defendant's premises over a two year period constituted special facts giving rise to a duty to protect patrons from the criminal assaults of unknown third parties.

*Madden*, 758 S.W.2d at 62. In *Virginia D.*, the Court based the hotel owner's duty to protect hotel guests from criminal acts of third persons on the special relationship of innkeeper-guest, and "in part on the existence of special facts, i.e., evidence of prior criminal incidents sufficient to alert management to the possibility that patrons might be in danger." *Id.*

Thus, while the Supreme Court in *Madden* stated that "the touchstone for the creation of a duty [for business owners] is foreseeability," impliedly, the Court, by noting with approval the precedential effect of *Brown*, and to some extent *Virginia D.*, recognized that for non-common areas not under the control of the business owner, such as an apartment under the control of the tenant, special circumstances must exist to establish foreseeability and a duty to protect the tenant. The history of violent crimes evinced in *Brown* confirmed that additional violent crimes could reasonably be anticipated absent effort by the landlord to dissuade or prevent such conduct, and were, therefore, foreseeable, and established that the landlord owed a duty to the tenant.[1] Thus, contrary to *Becker*, the Missouri Supreme Court has not "changed the focus of premises liability cases from the special circumstances and special relationships criteria to the concept of what is foreseeable." See *Becker*, 768 S.W.2d at 170.

Ms. Schelp also argues that *Aaron v. Havens*, 758 S.W.2d 446 (Mo. banc 1988), held that the landlord/tenant relationship imposes a duty on the landlord to make the premises safe against the criminal conduct of intruders and that the *Aaron* court rejected the proposition that "there was no duty to protect against violent crimes unless there is a past history of violent crimes." Ms. Schelp is mistaken. The court in *Aaron* held that the special facts and circumstances exception is *different* from a landlord's duty to make the common premises safe against foreseeable risks. *Id.* at 447.

In *Aaron*, the plaintiff was assaulted in her apartment by an individual who gained access through a fire escape. The plaintiff alleged in her petition that the landlord knew or should have known that the fire escape was a dangerous condition such that a criminal intruder could gain easy access to her apartment. The court concluded that the

---

1. Whether a duty exists is purely a question of law, and, therefore, a court decision. *Aaron v. Havens*, 758 S.W.2d 446, 447 (Mo.1988).

fire escape was part of the common premises under the landlord's control and held that "[t]here is no logical reason why a *dangerous condition of common premises*, proximately causing injury on private premises, could not be the occasion for liability." *Id.* (emphasis added). The *Aaron* court's holding is based on the landlord/tenant relationship and the landlord's control of the dangerous common premises. Thus, *Aaron* follows the rule of law that "the owner of an apartment building has a recognized duty to use due care to make *common premises* safe, as against foreseeable risks." *Id.*

Ms. Schelp does not contend that Cohen–Esrey failed to use due care to make the common premises safe or that the *Aaron* court overruled the prior violent crimes exception to the legal principle that a person owes no duty to protect another from a third persons' deliberate criminal assault. The two legal theories for establishing "duty" are different. Because Ms. Schelp did not show evidence of prior violent crimes having occurred within the apartment complex, she failed to establish that the landlord owed a duty to her under the violent crimes exception, and she cannot recover under the "special facts and circumstances exception."

■ A third exception to the rule that no duty is owed to protect from a third person's criminal attack is the landlord's duty to exercise ordinary care to keep the portion of the premises over which it retains control in a reasonably safe condition for its intended use. *Stubbs v. Panek*, 829 S.W.2d at 546. The landlord is liable for personal injuries resulting from its failure to perform this duty. *Id.* In order to show that the landlord retained control of the premises, evidence must support inference by the trier of fact that the tenant surrendered her right to exclusive possession and control. *Id.*

Arguing application of the third exception, Ms. Schelp asserts that Cohen–Esrey retained control of the apartment in which she resided by providing and maintaining secure door locks on the front and back doors of the apartment. Thus, the issue is whether sufficient evidence was presented to raise a submissible question of whether Cohen–Esrey retained sufficient control over the doors and locks to obligate it to maintain them in a reasonably safe condition. *Nenninger v. Oran Life Tabernacle Church*, 789 S.W.2d 530, 534 (Mo.App.1990).

The evidence favorable to the verdict shows that on the evening Ms. Schelp was attacked, she had locked both the front and the sliding glass doors to her apartment. After the attack, the front door was ajar and the latch on the sliding glass door was open. No sign of forced entry on either door was detected.

Cohen–Esrey, historically, had retained the ability to enter apartments. The landlord consistently entered apartments within the complex to perform maintenance requested by the tenant. Additionally, Cohen–Esrey entered apartments anytime after posting notice to all residents that routine maintenance would be performed on all apartments. However, the landlord/tenant agreement between the parties was modified to require Cohen–Esrey to obtain permission from Ms. Schelp before entering her apartment to perform maintenance and to require the presence of the resident manager when maintenance was performed. The apartment complex resident manager, Tina Keith, testified that Cohen–Esrey determined the kind of locks installed, when they were installed, and to whom, in addition to the tenant, it would provide keys to the locks. She also testified that management needed to retain a key to facilitate entry in the event of an emergency. Ms. Schelp's sister and roommate testified that she asked Ms. Keith whether Cohen–Esrey would permit acquisition of private locks and whether Cohen–Esrey would permit removing the key to the front door of the apartment from the master key system. Ms. Keith told her that although management always had to have access to the apartment, the key to her apartment would be removed from the landlord's master key system. Ms. Keith retained in her purse the only key maintained by the landlord to Ms. Schelp's apartment. Cohen–Esrey agreed not to enter Ms. Schelp's apartment without giving her advance notice and obtaining her permission. Ms. Keith also agreed to be present when any repairs were made in Ms. Schelp's apartment. Addi-

**854**

tionally, Cohen–Esrey allowed Ms. Schelp to install a chain lock on the front door.

The evidence disclosed that Ms. Schelp's sliding glass door was equipped only with a manufacturer's lock. Although Cohen–Esrey added a piston lock to most of the other sliding glass doors in the apartment complex during 1989, the sliding glass door to Ms. Schelp's apartment was not so equipped.[2] Ms. Keith testified piston locks were installed on sliding glass doors in apartments within the apartment complex because she and the maintenance man had determined that locked sliding glass doors could be opened from the outside simply by lifting them up and down.

As a matter of law, the evidence was insufficient to raise the submissible question of whether Cohen–Esrey retained sufficient control over the front door and lock for the jury to find that landlord owed a duty to tenant to keep her reasonably safe in her apartment from third party assaults. To make a submissible case, substantial evidence of sharing control between landlord and tenant must have been presented from which the jury could infer that under the agreement the tenant relinquished her right to exclusive possession and control and yielded to the landlord some measure of control and dominion over the premises. *Nenninger v. Oran Life Tabernacle Church*, 789 S.W.2d at 537. The agreement between the parties gave Ms. Schelp exclusive possession and control of her apartment. While Cohen–Esrey retained a key to the front door of the apartment and reserved the right to make repairs, it agreed not to enter the apartment without Ms. Schelp's permission. The apartment manager also agreed to be present when repairs to the apartment were performed. The landlord's obligation to make repairs to an apartment and the landlord's retention of authority to enter the premises are insufficient without more to establish the requisite possession or control by the landlord to make the landlord liable to the tenant for injury resulting from failure to keep the premises in a reasonably safe condition.

*Lemm v. Gould*, 425 S.W.2d 190, 195 (Mo. 1968). Cohen–Esrey, as a matter of law, did not retain control of the apartment.

Because the evidence did not establish that Cohen–Esrey had a duty to protect Ms. Schelp within her apartment from criminal acts of third persons, the judgment is reversed.

All concur.

---

2. Ms. Schelp did not submit as a negligence issue that Cohen–Esrey breached a duty to provide an adequate lock on the sliding glass door by failing to install a sound lock knowing that the existing lock on the sliding glass door was deficient.