Jason D. JAMES, et al.,
Plaintiffs/Appellants,

v.

UNION ELECTRIC COMPANY, et
al., Defendants/Respondents.

No. 73088.

Missouri Court of Appeals,
Eastern District,
Division One.

July 28, 1998.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Sept. 30, 1998.

Application for Transfer Denied
Nov. 24, 1998.

James E. Hullverson, Jr., St. Louis, for plaintiffs/appellants.

Evans & Dixon, Sam P. Rynearson, Gerre S. Langton, St. Louis, for defendants/respondents.

PUDLOWSKI, Judge.

Jason D. James, Jennifer James, and Michael James, by and through their next friend Betty J. Reed, (Plaintiffs) filed suit against Southwestern Bell Telephone Company, Inc. (SWBT) and Union Electric after their father, Jesse James (James), was electrocuted while attempting to repair the telephone line. Union Electric settled with Plaintiffs and is not a party to this appeal. SWBT filed a motion to dismiss for lack of subject matter jurisdiction in the circuit court or, in the alternative, a motion for summary judgment. On 7 July 1997, the trial court issued an order granting SWBT's motion to dismiss for lack of jurisdiction and denying the summary judgment motion as moot. The court's order was incorporated into its 23 July 1997 judgment. Plaintiffs appeal.

At the time of his injury, James was working for Schatz Underground Cable (Schatz). Schatz and SWBT maintained a written "Continuing Unit Price Agreement." Under the terms of this agreement, Schatz performed "various functions associated with the construction, removal and maintenance" of SWBT telephone poles. Schatz generally repaired SWBT lines an average of 6 or 7 times per day. On 18 March 1995, SWBT called Schatz to repair a broken telephone cable on one of its poles pursuant to the "Continuing Unit Price Agreement." Schatz dispatched James to perform the cable splicing.

In order to effectuate his job, James raised himself in a Schatz truck boom bucket in order to attach a replacement telephone cable to the SWBT utility pole. From the insulated boom bucket, James with his right hand swung a safety strap around the pole and tried to catch the other end of the strap with his left hand. His hand touched a lug nut and his forearm touched a remaining phone line and he was electrocuted. Plaintiffs contend that the trial court erred in granting SWBT's motion to dismiss for lack of subject matter jurisdiction based on an affirmative defense of the exclusive jurisdiction of Workers' Compensation Law because (1) James was not on SWBT premises; (2) SWBT was not James's statutory employer; and (3) there was a question of ultimate fact for a jury to decide if the case fell under the Workers' Compensation jurisdiction.[1]

The Workers' Compensation Law provides for the exclusive rights and remedies of injured workers. Section 287.120 RSMo (1994). The proper method to raise a defense of exclusivity of Workers' Compensation Law is to submit a motion to dismiss for lack of subject matter jurisdiction. *State ex rel. J.E. Jones Const. Co. v. Sanders*, 875 S.W.2d 154, 157 (Mo.App.E.D.1994). When this defense is raised, the summary judgment standard is not appropriate upon review. *Id.* The motion to dismiss for lack of subject matter jurisdiction should be granted whenever it "appears" the court lacks jurisdiction. *Id.*; Rule 55.27(g)(3). The burden of proof rests on the party alleging that jurisdiction is lacking, but a high quantity of proof is not required. *Michael Vatterott v. Hammerts Iron Works, Inc.*, 1997 WL 523894 (Mo.App.E.D.1997); *DuBose v. Flightsafety Intern., Inc.*, 824 S.W.2d 486, 488 (Mo.App. E.D.1992). The party raising the defense must show by a preponderance of evidence that the court lacks jurisdiction. *Id.* Additionally, liberal construction of the Workers' Compensation Law requires that "where a question of jurisdiction is in doubt, it should be held to be in favor of the [Labor and Industrial Relations] commission." *Bass v. National Super Markets, Inc.*, 911 S.W.2d 617, 619 (Mo. banc 1995). We review the trial court's decision for an abuse of discretion only. *Mooney v. Missouri Athletic*

---

1. We urge the parties to review *Thummel v. King,* 570 S.W.2d 679, 686 (Mo. banc 1978) when drafting their point(s) relied upon in order to facilitate and clarify issues for appellate review. Rule 84.04.

*Club*, 859 S.W.2d 772, 773 (Mo.App. E.D. 1993).

The legislature enacted Section 287.040 RSMo (1994) "to prevent employers from circumventing the requirements of the [Workers' Compensation] Act by hiring independent contractors to perform work the employer would otherwise perform." *Bass*, 911 S.W.2d at 619. Section 287.040.1 RSMo (1994)[2] identifies those individuals who are considered statutory employees entitled to protection under the Workers' Compensation Law. In order for an individual to be a statutory employee, three factors must coexist: (1) the work must be performed pursuant to a contract; (2) the injury must occur on or about the premises of the statutory employer; and (3) the work being performed is the usual business of the statutory employer. *Id.*; *Bass*, 911 S.W.2d at 619–20.

It is undisputed that James was performing duties pursuant to the "Continuing Unit Price Agreement." Nor is it disputed that the cable splicing was usual business for SWBT. Thus, two of the three elements for statutory employment are met. However, Plaintiffs contend that James's electrocution did not occur "on or about" the premises of SWBT.

Missouri courts have broadly construed the term "premises" in Section 287.040.1 RSMo (1994). *Huff v. Union Elec. Co.*, 598 S.W.2d 503, 511 (Mo.App. E.D.1980). Premises means "any place under the exclusive control of the statutory employer where his usual business is being carried on or conducted" including "locations that temporarily may be under the exclusive control of the statutory employer by virtue of the work being done." *Id.* (citing *Boatman v. Superior Outdoor Advertising Co.*, 482 S.W.2d 743, 745 (Mo.App.Spring.Dist.1972); *Mooney v.*

*Missouri Athletic Club*, 859 S.W.2d 772, 774 (Mo.App. E.D.1993)). The court in *Huff* held that the erection of transmission towers on a railroad right-of-way was on the "premises" of Union Electric, the statutory employer, even though the land was titled to another. *Id.*

James attempted to secure his safety belt around the utility pole at the time of his injury. The telephone pole is located on private property where the general public does not have access to it. SWBT and UE held exclusive control of the premises (the pole). Without the agreement between Schatz and SWBT, James would not have had access to the utility pole. We conclude James was on or about the immediate premises of SWBT when he was injured and, therefore, he would ordinarily be considered a statutory employee.

However, Plaintiffs contend that there is a question of ultimate fact for a jury to decide whether the Section 287.040.3 RSMo (1994) affirmative defense of a statutory employee applies under the facts of this case.[3] Plaintiffs contend that the work James performed on the SWBT utility pole constituted a repair to an improvement which would remove the case from the exclusive jurisdiction within Workers' Compensation and make SWBT liable. "Where the facts are not in dispute as to the nature of the agreement and the work required by it, the existence or absence of statutory employment is a question of law for the courts to decide." *Bass*, 911 S.W.2d at 621.

The exception in Section 287.040.3 RSMo (1994) applies in a situation "where a property owner procures an independent contractor to build him a house," and that situation calls for "a reason why one who is merely the owner of the premises upon which he may in many cases not even enter should not be

---

2. The statute reads:

> Any person who has work done under contract on or about his premises which is an operation of the usual business which he there carries on shall be deemed an employer and shall be liable under this chapter to such contractor, his subcontractors, and their employees, when injured or killed on or about the premises of the employer while doing work which is in the usual course of his business.

3. The statute reads:

> The provisions of this section *shall not apply* to the owner of premises upon which improvements are being erected, demolished, altered or repaired by an independent contractor but such independent contractor shall be deemed to be the employer of the employees of his subcontractors and their subcontractors when employed on or about the premises where the principal contractor is doing work.

made an employer in any sense of the workmen on the job." *West v. Posten Const. Co.*, 804 S.W.2d 743, 745 (Mo. banc 1991)(citing *Atlas Powder Co. v. Hanson*, 136 F.2d 444, 448 (8th Cir. Mo.1943)). Any owner who has improvements which are being "erected, demolished, altered or repaired by an independent contractor but such independent contractor shall be deemed to be the employer of the employees of his subcontractors and their subcontractors when employed on or about the premises where the principal contractor is doing work" does not fall within the provisions of this statute. Section 287.040.3 RSMo (1994).

The Missouri Supreme Court defined an improvement as being a "permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs." *State v. Neill*, 397 S.W.2d 666, 669 (Mo. banc 1966); *Fueston v. Burns and McDonnell Eng.*, 877 S.W.2d 631, 636 (Mo. App. W.D.1994). Additionally, a component of an improvement is considered an improvement.[4] *Fueston*, 877 S.W.2d at 636.

Reviewing James's actions under these definitions clarifies the Plaintiffs' position and mandates that we reverse the trial court's judgment dismissing this cause of action. The construction of the utility pole involved an expenditure of labor and money. By placing the utility pole in the easement of the alley, the land was made more useful after being improved because it now has a purpose rather than remaining fallow. James's repair of the line on the utility pole was an essential component of the functioning of the pole. Hence, he was performing the repair of an improvement which triggers the statutory exception and the trial court erred in dismissing Plaintiffs' cause of action. We find that the statutory exception, Section 287.040.3 RSMo (1994), applies.

However, SWBT requested that if the trial court erred in granting the dismissal, we review its motion for summary judgment pursuant to Rule 84.14. Summary judgment will be granted as a matter of law to the moving party when there is no genuine issues as to any material fact. Rule 74.04(c)(3). It is intended to move the parties beyond the petition's allegations and determine if a material fact exists for trial. *Martin v. City of Washington*, 848 S.W.2d 487, 491 (Mo. banc 1993). Appellate review of summary judgment is purely a question of law. *ITT Commercial Finance v. Mid-America Marine*, 854 S.W.2d 371, 376 (Mo. banc 1993).

Missouri recognizes the common law rule that a landlord has a duty to use reasonable and ordinary care to prevent injuries to an invitee on that landowner's premises. *Hunt v. Jefferson Arms Apartment Co.*, 679 S.W.2d 875, 879 (Mo.App. E.D.1984). This rule was tempered by disallowing landlord liability for injuries suffered by an employee when an independent contractor is in possession and control of the premises. *Zueck v. Oppenheimer Gateway Properties, Inc.*, 809 S.W.2d 384, 386 (Mo. banc 1991). Traditionally, under the "inherently dangerous activity doctrine," landowners who know or should know the work which they are contracting involves a "special danger" will be held liable.[5] *Id.* However, in *Halmick v. SBC Corporate Services, Inc.*, 832 S.W.2d 925, 928 (Mo.App. E.D.1992), the dichotomy between inherently dangerous activity and non-inherently dangerous activity was abolished. The focus for imposing liability on dangerous activities now revolves around the landowner's substantial control of "the physical activities of the employees" or "the details of the manner in which the work is done." *Matteuzzi v. Columbus Partnership, L.P.*, 866 S.W.2d 128, 132 (Mo. banc 1993).

Plaintiffs pleaded that the utility poles are inherently dangerous and create an

---

4. This definition is analogous to other jurisdictions. See *Fueston*, 877 S.W.2d at 636 (listing multiple jurisdictions and their interpretations of improvements, noting *Mullis v. Southern Co. Services, Inc.*, 250 Ga. 90, 296 S.E.2d 579, 584 (1982), where air circuit breaker, an essential component of power plant's electrical system, found to be "an improvement to real property").

5. For a discussion on the development of the modern rule governing landowner liability for injuries to employees of independent contractors, see *Gillespie v. St. Joseph Light & Power Co.*, 937 S.W.2d 373, 375 (Mo.App. W.D.1996).

unreasonable risk of serious injury or death. Since the instant action is pleaded as being inherently dangerous, rather than another premises liability theory, the analysis of *Matteuzzi* applies.[6] *See Owens*, 866 S.W.2d at 134; *Matteuzzi*, 866 S.W.2d at 132.

In its motion for summary judgment, SWBT stated that it had no right to control any aspect of Schatz's work under their agreement, nor did SWBT give directions on how to attach the telephone cable. SWBT also specifically averred that its employees were not controlling the physical activities of James or the details of the manner in which the work James was doing was being performed. Plaintiffs contended by alleging that the SWBT employees told the Schatz crew where the location of the damaged pole existed and supplied cable to the crew, but admitted to all of SWBT's points regarding control and direction in their response to SWBT's motion for summary judgment.

SWBT relies on *Owens v. Shop 'N Save Warehouse Foods*, 866 S.W.2d 132 (Mo. banc 1993). An independent contractor was painting the ceiling of a Shop 'N Save store. Shop 'N Save supplied the painter with a specific shade of paint which did not conform to the usual chemistry of ceiling paint. Due to the irregular paint, the painter informed Shop 'N Save that the scaffold was becoming slippery and he asked for a railing to be installed to prevent him from falling off the scaffold. Shop 'N Save failed to provide the railing and the painter fell and suffered serious and permanent injuries. On appeal, the painter alleged that "Shop 'N Save failed to provide adequate protection for persons performing inherently dangerous work." *Id.* at 134. The Court rejected the employee's cause of action for Shop 'N Save's direct negligence in failing to take precautions for the painter in that Shop 'N Save controlled neither the "physical activities of the employees" nor the "details of the manner in which the work [was] done." *Id.* at 135. The Court reinforced its ruling in *Matteuzzi* that a landowner is not liable to employees of independent contractors covered by workers' compensation. *Id.* at 134; *Matteuzzi*, 866 S.W.2d at 132.

SWBT's actions did not amount to control over James's physical activity nor did SWBT control the details of the manner in which the work was done. SWBT merely told the Schatz crew where the damaged pole was located and gave them some of the materials in which to perform the tasks. This is not sufficient "control" to establish liability against SWBT.

In summary, we find the circuit court erred in granting SWBT's motion to dismiss for lack of subject matter jurisdiction. However, according to Rule 74.04 we grant summary judgment as we find from the motion and the response thereto that there is no genuine issue as to any material fact and, therefore, SWBT is entitled to a judgment as a matter of law. Accordingly, this cause is remanded with direction to enter judgment in favor of SWBT in conformity with this opinion.

GRIMM, P.J., concurs in result only.

GARY M. GAERTNER, J., concurs.

---

**6.** We recognize the recent erudite decision of the Eighth Circuit in *Mullins v. Tyson Foods, Inc.* (1998 WL 237042, 8th Cir. Mo.). The facts in this case are distinguished from *Mullins* in that James was injured where he worked rather than a non-job site controlled by SWBT.