**Greta M. WRIGHT, Plaintiff/Appellant,**

v.

**ST. LOUIS PRODUCE MARKET, INC., et al., Defendants/Respondents.**

**No. ED 77953.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Feb. 27, 2001.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 5, 2001.

Application to Transfer Denied
May 29, 2001.

---

[5]. We find the remaining points raised by appellant meritless and affirm pursuant to Rule 30.25(b).

William R. Stahlhuth, Steve Wolf, Eureka, MO, for appellant.

J. Michael Waller, Creve Coeur, MO, for Ray Nekola.

John S. McCollough, St. Louis, MO, for St.Louis Produce Market.

Joseph H. Mueller, Robyn G. Fox, Catherine M. Vale, St. Louis, MO, for Vicki Earney.

CRAHAN, Judge.

Appellant Grete Wright appeals the judgment sustaining Respondent St. Louis Produce Market, Inc.'s ("Produce Row") motion for summary judgment. Wright further appeals the trial court's orders sustaining Respondents Ray Nekola and Vicki Earney's motions to dismiss.

On the night of June 6, 1997, Mary Ann Wright Hursey, while working the night shift at Field Fresh Processed Foods, was murdered by co-worker Ronald Hardwick, a convicted sex offender.[1] The crime occurred on premises owned by Produce Row, leased to Rudin Realty Liquidating Trust, and subleased to Field Fresh. Ms. Wright Hursey was at all times a Field Fresh employee. Grete Wright, Ms. Wright Hursey's mother, sued Produce Row, Ray Nekola (owner and operator of Field Fresh), and Vicki Earney (Field Fresh supervisor) for the wrongful death of her daughter. In her first amended petition, Wright asserted Produce Row, by failing to make its premises reasonably safe and by failing to protect Ms. Wright Hursey from the criminal acts of Hardwick, and Earney and Nekola, by failing to provide a safe work environment, proximately caused Ms. Wright Hursey's death.

---

1. Hardwick later pleaded guilty to first degree murder and is currently serving a life sentence.

Produce Row moved for summary judgment, claiming it had no duty to protect Ms. Wright Hursey from the criminal acts of Hardwick. The trial court, through its order and judgment, sustained the motion. Nekola and Earney separately moved to dismiss Wright's first amended petition, asserting Worker's Compensation immunity under section 287.120 RSMo 1994.[2] The trial court sustained the motions, dismissing the first amended petition as against Nekola and Earney for lack of subject-matter jurisdiction. Wright's appeal followed.

The standard of review on appeal regarding summary judgment is essentially de novo. *ITT Commercial Fin. Corp. v. Mid-America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The criteria for testing the propriety of summary judgment are no different from that which should be employed by the trial court to determine the propriety of sustaining the motion initially. *Id.* Summary judgment will be upheld on appeal if there is no genuine dispute of material fact, and the movant is entitled to judgment as a matter of law. *Id.*

Where the movant is a defending party, the movant may establish a right to judgment by showing facts that negate any one of the claimant's elements facts; that the non-movant, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of any one of the claimant's elements; or that there is no genuine dispute as to the existence of each of the facts necessary to support the movant's properly-pleaded affirmative defense. *Tresner v. State Farm Ins. Co.*, 913 S.W.2d 7, 9 (Mo. banc 1995) (quoting *ITT*, 854 S.W.2d at 381).

The propriety of summary judgment is purely an issue of law. *ITT*, 854 S.W.2d at 376. Accordingly, an appellate court need not defer to the trial court's order granting summary judgment. *Id.* The court will review the record in the light most favorable to the party against whom judgment was entered, and will accord the non-movant the benefit of all reasonable inferences. *Id.*

■ On appeal, Wright contends Produce Row negligently failed to protect Ms. Wright Hursey from Hardwick's deliberate criminal acts. In a negligence action, the plaintiff must establish the existence of a duty on the part of the defendant to protect plaintiff from injury, failure of the defendant to perform that duty, and that plaintiff's injury was proximately caused by defendant's failure. *Seitz v. Lemay Bank and Trust Co.*, 959 S.W.2d 458, 463 (Mo. banc 1998). At issue in this appeal is whether Produce Row had a duty to protect Ms. Wright Hursey from Hardwick's deliberate criminal acts.

■ Generally, a party owes no duty to protect another person from deliberate criminal attack by a third person. *Stubbs v. Panek*, 829 S.W.2d 544, 546 (Mo.App. 1992).[3] But some obligations are imposed upon a party to protect others against

---

2. Unless otherwise indicated, all statutory references are to Revised Missouri Statues 1994.

3. Policy reasons for this rule include: judicial reluctance to tamper with a traditional, common law concept; the notion that the deliberate criminal act of a third person is the intervening cause of harm to another; the difficulty that often exists in determining the foreseeability of criminal acts; the vagueness of the standard the owner must meet; the economic consequences of imposing such a duty; and conflict with the public policy that protecting citizens is the government's duty rather than a duty of the private sector. *Nappier v. Kincade*, 666 S.W.2d 858, 860 (Mo.App.1984).

deliberate criminal attack by a third party. *Schelp v. Cohen–Esrey Real Estate Serv., Inc.,* 889 S.W.2d 848, 850 (Mo.App.1994). These exceptions include, *inter alia,* obligations arising from "special relationships" or "special facts and circumstances." *Faheen, By and Through Hebron v. City Parking Corp.,* 734 S.W.2d 270, 272 (Mo. App.1987). A third exception to the rule that no duty is owed to protect from a third person's criminal attack is the landlord's duty to exercise ordinary care to keep the portion of the premises over which it retains control in a reasonably safe condition for its intended use. *Schelp,* 889 S.W.2d at 853.

■ Special relationships include those situations where a party entrusts himself to the protection of another and relies upon that person to provide a place of safety. *Id.* (citing *Nappier,* 666 S.W.2d at 861). Special relationships which are recognized in Missouri include innkeeper-guest, common carrier-passenger, school-student, and sometimes employer-employee. *Faheen,* 734 S.W.2d at 272. In those situations, the relationship alone gives rise to the duty. *Id.*[4]

■ The special facts and circumstances exception includes three theories. First, an intentional infliction of injury by known and identifiable third persons. *Schelp,* 889 S.W.2d at 851. Second, frequent and recent occurrences of violent crimes against persons on the premises by unknown assailants (the "violent crimes" exception). *Id.* A third special circumstance giving rise to a duty exists when the misfeasance of a landlord creates a

circumstance of extraordinary danger or enhances the risk of tenant victimization beyond the risk of crime victimization generally. *See Wood v. Centermark Properties, Inc.,* 984 S.W.2d 517, 528 (Mo.App. 1998).[5]

■ In her first point on appeal, Wright urges that the trial court erred in sustaining Produce Row's motion for summary judgment because under the first theory of the special facts and circumstances exception—intentional infliction of injury by known and identifiable third persons—Produce Row possessed a duty to protect Ms. Wright Hursey from Hardwick's deliberate criminal attack. Under this exception, a duty may result when a person, known to be violent, is on the premises, or an individual is present who has acted in such a way as to indicate danger, and sufficient time exists to prevent injury. *Schelp,* 889 S.W.2d at 851.

Under the former theory, a duty to protect another from deliberate criminal attack by a third person may arise when a person, known to be violent, is present and on the premises. *See Brown v. Van Noy,* 879 S.W.2d 667, 671 (Mo.App.1994). Wright asserts Produce Row knew, or should have known, of Hardwick's violent tendencies. Wright states Produce Row knew Field Fresh, as well as other lessees, hired convicted felons (such as Hardwick) to work on the premises. She urges this fact imparts constructive knowledge on the part of Produce Row of Hardwick's violent tendencies. Wright also describes an altercation that occurred between Hardwick and Gary Peete, a fellow Field Fresh em-

---

**4.** Special relationships are not at issue in this appeal.

**5.** Wright incorrectly intimates that Produce Row's provision of security for the entrance, exit, and common areas of the premises constitutes an implied duty to protect Ms. Wright

Hursey from Hardwick's criminal attack. "The provision of a security force, which has the policy of patrolling the premises, does not create an assumed duty." *Knop v. Bi State Dev. Agency of Missouri Illinois Metro. Dist.,* 988 S.W.2d 586, 591 (Mo.App.1999).

ployee. Before Ms. Wright Hursey's murder, Hardwick argued with Peete regarding another female employee. Hardwick threatened to stab Peete but no physical acts of violence occurred. Vicki Earney, Hardwick's supervisor and Field Fresh employee, knew of this altercation but never reported the incident to Produce Row. Wright urges this altercation apprised Produce Row of Hardwick's violent propensities.

■ Wright, therefore, contends that on the night of the murder, Produce Row, who secured the warehouse's entrance, should have prevented Hardwick from entering the premises. She argues Produce Row, by admitting Hardwick, breached its duty to protect Ms. Wright Hursey from the subsequent violent attack. Wright, however, presents no evidence that Produce Row had specific knowledge of Hardwick's criminal background or his violent tendencies. General knowledge of lessees' hiring practices and an unreported argument between Field Fresh employees fails to impart Produce Row with knowledge of Hardwick's dangerous nature. *See Nappier*, 666 S.W.2d at 862; *compare Van Noy*, 879 S.W.2d at 671–72 (plaintiff presented sufficient evidence to establish a duty on the part of a pub owner to protect a patron from the criminal attack of another patron known by the pub owner to have violent tendencies).[6]

■ Under the latter theory, a duty to protect another person from deliberate criminal attack by a third person may result when an individual is present who has acted in such a way as to indicate danger, and sufficient time exists to prevent injury. *Schelp*, 889 S.W.2d at 850–51. Hardwick, in his deposition, described in detail the events of June 6, 1997. Considerably inebriated, Hardwick arrived for the night shift at Field Fresh along with Ms. Wright Hursey who was the shift supervisor. Both discussed their past marital problems and an argument ensued. Hardwick "snapped" and struck Ms. Wright Hursey in the head with a metal table leg. She collapsed from the blow. A few minutes later, Ms. Wright Hursey began to whimper and Hardwick struck her again. He then transported Ms. Wright Hursey's lifeless body from the premises in her truck and unsuccessfully attempted to dispose of her body.

Nothing in the record indicates Produce Row had sufficient time to prevent Hardwick's attack. Produce Row secured the entrance, exit, and common areas of the warehouse but not the individual units. Only a few moments elapsed between the argument and the assault, which occurred

**6.** Wright intimates throughout her brief that Produce Row assumed a duty to protect employees on the premises by adopting a general policy of removing or denying admittance to intoxicated individuals. She asserts Produce Row breached this duty on June 6, 1997, by admitting an inebriated Hardwick. Wright, however, presents no evidence that Produce Row personally assured Ms. Wright Hursey or Field Fresh protection from intoxicated individuals. Produce Row, through its alcohol policy, did not assume a duty to protect lessees' employees from alcohol-related attacks. *See Knop*, 988 S.W.2d at 591–92; *compare Keenan v. Miriam Found.*, 784 S.W.2d 298 (Mo.App.1990) (defendant assumed duty to protect plaintiff from deliberate criminal attack by third person where defendant personally assured plaintiff she would be protected). Moreover, to establish such a duty under the circumstances presented in this case, Wright would have to establish that Produce Row employees would have the right to override an employer's decision as to whether an employee was so inebriated as to be unfit for work. There is nothing in the record to support a finding that Produce Row reserved such extraordinary powers. It is clear from the record, however, that Hardwick's supervisor, Ms. Wright Hursey, did not consider him too inebriated to work.

within a unit leased by Field Fresh. Produce Row, therefore, had insufficient time to prevent the attack. *See Nappier,* 666 S.W.2d at 862 (no duty on the part of restaurant owner to prevent a criminal attack upon a customer where plaintiff did not allege agent of restaurant knew of altercation in time to prevent the attack). Point denied.

■ In her second point on appeal, Wright asserts the trial court erred in sustaining Produce Row's motion for summary judgment because under the second theory of the special facts and circumstances exception—frequent and recent occurrences of violent crimes against persons on the premises by unknown assailants— Produce Row possessed a duty to protect Ms. Wright Hursey from Hardwick's deliberate criminal attack. This theory, also referred to as the "violent crimes" exception, imposes a duty on a landowner when the following elements exist: (1) a relationship between plaintiff and defendant, such as landlord and tenant; (2) prior specific incidents of violent crimes on the premises that are sufficiently numerous and recent to put a defendant on actual or constructive notice that third persons are likely to endanger the safety of tenants; and, (3) sufficient similarity between the incident causing the injury and prior specific incidents of violent crimes occurring on the premises to prompt a reasonable person to take precautions to protect the plaintiff from that activity. *Schelp,* 889 S.W.2d at 851.

Wright enumerates several incidents of violent crime occurring at Produce Row between November 3, 1993 and June 6, 1997, the date of Ms. Wright Hursey's murder: two second degree assaults, nine third degree assaults, and four armed robberies. Although the record is replete with prior assaults and armed robberies, there are no instances of reported violent

crimes between co-workers. Moreover, no prior homicides are reported.

It is not necessary that the prior crimes be identical to the crime against Ms. Wright Hursey, but the nature of the criminal acts must share common elements sufficient to place the Produce Row on notice of the danger and alert it of the safeguards which are appropriate to the risks. *See Wood,* 984 S.W.2d at 524. The prior crimes alleged by Wright were not sufficiently similar to place Produce Row on notice that lessees' employees were likely to endanger the safety of other employees. *See Schelp,* 889 S.W.2d at 851. The prior crimes, at best, placed Produce Row on notice that third persons may pose a risk to the safety of those inside the warehouse. Produce Row responded to this threat by securing the entrance, exit, and common area of the premises. The murder of Ms. Wright Hursey, however, occurred within a separate unit operated by Field Fresh. Under these circumstances, Produce Row should not be expected to take precautions to protect employees hired by Field Fresh from other Field Fresh employees, particularly for incidents occurring outside the common area. *See id.; Wood,* 984 S.W.2d at 524–25 (shopping mall had no duty to protect mall employee from violent crime by a third party under violent crimes exception because of dissimilarity between the prior crimes alleged and the abduction and murder of employee). Point denied.

■ In the third point on appeal, Wright asserts the trial court erred in sustaining Produce Row's motion for summary judgment because under the enhancement of risk theory, she established a duty on the part of Produce Row to protect Ms. Wright Hursey from Hardwick's deliberate criminal attack. Enhancement of risk, the third special fact or circumstance giving rise to liability for the criminal act of a third party, applies when

the misfeasance of the landlord creates a circumstance of extraordinary danger or enhances the risk of the tenant's victimization beyond the risk of crime victimization generally. *Id.* at 528. Wright contends Produce Row enhanced the risk of Ms. Wright Hursey's victimization by allowing Hardwick to enter the premises in an inebriated condition.

■ In order to prevail on an enhancement of the risk theory, there must be evidence that the landlord's negligence caused a condition of danger consisting of something greater than that presented out on the street and in the neighborhood generally. *Id.* Wright contends Produce Row operates its warehouse in a high crime area. It stands to reason that Ms. Wright Hursey had an equal (if not greater) chance of confronting a violent, intoxicated individual in the area surrounding the premises than she did inside Produce Row's warehouse. Wright has not produced evidence demonstrating that Produce Row's actions created a risk to Ms. Wright Hursey greater than the risk of crime in general in the area. *See id.* at 528–29 (defendant did not enhance risk to decedent by compelling her to park in remote area of mall parking lot where plaintiff could not demonstrate greater risk of crime to decedent than in neighborhood generally). Point denied.

■ In the fourth point on appeal, Wright urges the trial court erred in sustaining Produce Row's motion for summary judgment as Produce Row breached its duty to protect Ms. Wright Hursey from Hardwick's criminal attack by failing to keep the premises reasonably safe. As discussed earlier, an exception to the rule

that no duty is owed to protect from a third person's criminal attack is the landlord's duty to exercise ordinary care to keep the portion of the premises over which it retains control in a reasonably safe condition for its intended use. *Schelp,* 889 S.W.2d at 853; *Nenninger v. Trustees of Oran Life Tabernacle Church,* 789 S.W.2d 530, 532 (Mo.App.1990). Under this theory, the landlord is liable for personal injuries resulting from its failure to perform this duty. *Schelp,* 889 S.W.2d at 853.

■ Wright's allegations fail to implicate a failure by Produce Row to keep the portion of the premises under its control in a reasonably safe condition. Despite her contentions, the record reveals Produce Row maintained control only over the common area of the premises. Produce Row's covenant to maintain and repair the premises and the occasional entrance by security personnel into the individual leased units fail to demonstrate sufficient surrender of the right to exclusive possession and control required to establish retention of control by Produce Row. *See id.*[7] Produce Row's duty to keep the premises in a reasonably safe condition thus did not extend to the leased units; instead, the duty applied to the common area. The murder of Ms. Wright Hursey, however, occurred within a unit leased by Field Fresh, an area beyond Produce Row's control. Produce Row had no duty to keep this area in a reasonably safe condition. Point denied. The trial court properly granted summary judgment to Produce Row.

■ Wright further appeals the trial court's orders sustaining Earney and

7. The landlord's obligation to make repairs and the landlord's retention of authority to enter the premises are insufficient without more to establish the requisite possession or control by the landlord to make the landlord liable to the tenant for injury resulting from failure to keep the premises in a reasonably safe condition. *Schelp,* 889 S.W.2d at 854 (quoting *Lemm v. Gould,* 425 S.W.2d 190, 195 (Mo.1968)).

Nekola's motions to dismiss. The trial court dismissed Wright's claims against Earney and Nekola for lack of subject matter jurisdiction under the Worker's Compensation Act, chapter 287. Section 287.120. Worker's Compensation law provides for the exclusive rights and remedies of injured workers. Section 287.120; *James v. Union Elec. Co.*, 978 S.W.2d 372, 374 (Mo.App.1998). The proper method to raise a defense of exclusivity of Worker's Compensation law is to submit a motion to dismiss for lack of subject matter jurisdiction. *Id.* The motion to dismiss for lack of subject matter jurisdiction should be granted whenever it "appears" the court lacks jurisdiction. *Id.* The burden of proof rests on the party alleging that jurisdiction is lacking, but a high quantity of proof is not required. *DuBose v. Flightsafety Int'l, Inc.*, 824 S.W.2d 486, 488 (Mo.App. 1992). The party raising the defense must show by a preponderance of evidence that the court lacks jurisdiction. *James*, 978 S.W.2d at 374. Additionally, liberal construction of the Worker's Compensation law requires that "where a question of jurisdiction is in doubt, it should be held to be in favor of the [Labor and Industrial Relations] commission." *Id.* (quoting *Bass v. National Super Markets, Inc.*, 911 S.W.2d 617, 619 (Mo. banc 1995)).

We review the trial court's decision for an abuse of discretion only. *Mooney v. Missouri Athletic Club*, 859 S.W.2d 772, 773 (Mo.App.1993). The trial court abuses its discretion when its ruling is clearly against the logic of the circumstances and is so arbitrary and unreasonable that it shocks the sense of justice and indicates a lack of careful consideration. *Lohmann v. Norfolk & Western Ry. Co.*, 948 S.W.2d 659, 668 (Mo.App.1997).

■ Wright asserts Earney and Nekola's failure to provide a safe work environment constitutes an affirmative act

of negligence precluding immunity from common law liability. An employer owes various duties to his employees including the duty to provide a safe work place, to provide safe appliances and equipment, to warn of dangers about which the employee may be ignorant, to provide suitable fellow employees, and to make and enforce rules for employee conduct. *Biller by Summers v. Big John Tree Transplanter Mfg. and Truck Sales, Inc.*, 795 S.W.2d 630, 633 (Mo.App.1990). The duty to provide a safe place to work is a duty which the master may not escape by delegating the task to someone else. *Id.* An employee chosen by the employer to implement the employer's duty to provide a safe workplace enjoys the same immunity for a failure to discharge that duty. *State ex rel. Feldman v. Lasky*, 879 S.W.2d 783, 785 (Mo.App.1994).

■ Worker's Compensation is the exclusive remedy in such a circumstance unless the injured worker alleges "something more" than the co-employee's failure to implement the employer's duty to provide a safe workplace. *Id.* The "something more" necessary to impose liability upon a co-employee must be determined on a case-by-case basis. *Workman v. Vader*, 854 S.W.2d 560, 562 (Mo.App.1993). The co-employee, however, must be charged with something more than failure to provide a safe place to work. *See id.* The "something more" required to impose tort liability includes any affirmative act, taken while the officer is acting outside the scope of the employer's responsibility, that breaches a personal duty of care owed to a fellow employee. *Craft v. Scaman*, 715 S.W.2d 531, 537 (Mo.App.1986).

■ In response to a prior altercation with another Field Fresh employee, Hardwick was moved to the night shift. While working this shift, Hardwick murdered Ms. Wright Hursey. Wright asserts this affirmative act of negligence precludes

Worker's Compensation immunity. Wright, however, contends nothing more than the failure to provide a safe work environment. This alone does not abridge Worker's Compensation immunity. *See Workman*, 854 S.W.2d at 562. As stated above, a plaintiff must allege "something more," such as a breach of a personal duty to plaintiff. *Craft*, 715 S.W.2d at 537.

In cases that have recognized the "something more" element has been met, the supervisor had personally participated in the "something more" by directing the employees to engage in dangerous conditions that a reasonable person would recognize as hazardous and beyond the usual requirements of the employment. *Lyon v. McLaughlin*, 960 S.W.2d 522, 526 (Mo. App.1998); *see Hedglin v. Stahl Specialty Co.*, 903 S.W.2d 922, 927 (Mo.App.1995) (holding supervisor liable where supervisor personally arranged for employee to be dangled from tines of a forklift over a vat of scalding water into which employee fell and died); *Craft*, 715 S.W.2d at 537–38 (holding president of fireworks company personally liable for employee's injuries where president personally held a board directly against spinning spool of fuse to prop it up and the fuse caught fire and burned employee operating the machine); *Workman*, 854 S.W.2d at 564 (finding manager could be held liable for negligence in throwing packaging materials on floor and then covering them with slippery cardboard boxes causing plaintiff to slip and fall when she stepped on side of cardboard box). The transfer of Hardwick to the night shift was not an affirmative act, taken outside the scope of Produce Row's responsibility, that breached a duty of care to Ms. Wright Hursey. Earney and Nekola perhaps breached Produce Row's duty to provide a safe work environment. But pursuant to the case law examined above, Worker's Compensation provides Wright her sole remedy in this circumstance. *See*

*Lasky*, 879 S.W.2d at 785. The trial court did not abuse its discretion in sustaining Earney and Nekola's motions to dismiss. The judgments are affirmed.

GARY M. GAERTNER, P.J., concurs.

DRAPER, J., concurs.