Joe BUSSELLE, Employee/Respondent,

v.

WAL–MART, Employer/Appellant.

No. 23660.

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 31, 2001.

Mary O. Thompson, Field, Gentry & Benjamin, P.C., Springfield, for Appellant.

John C. Banning, Reynolds, Parmele & Gold, P.C., Springfield, for Respondent.

PREWITT, Judge.

Wal–Mart ("Appellant" or "Wal–Mart") appeals from the April 11, 2000 Labor and Industrial Relations Commission's Final Award Allowing Compensation, which affirmed and incorporated the December 7, 1999 award and decision of the Administrative Law Judge that found that Wal–Mart was, under § 287.040.1, RSMo 1994, the statutory employer of Joe Busselle ("Respondent" or "Busselle").

Appellant contends that the Labor and Industrial Relations Commission ("Commission") erred as a matter of law in holding Wal–Mart liable as a statutory employer because Busselle, an independent electrical contractor with special expertise, was at the time of his injury doing electrical work outside the usual course of Wal–Mart's business of retail sales and thus was not under Wal–Mart's "employment" for purposes of the statute.

Joe Busselle had worked as an electrician since 1940. In the year prior to his accident, Busselle worked between twenty and thirty hours per week for a variety of customers, doing electrical contracting. In addition to the Wal–Mart store in Bolivar, Missouri, where the injury occurred, Busselle also performed occasional electrical work at the Wal–Mart in Buffalo, Missouri. He had separate agreements with each store.

Busselle first performed electrical work for Wal–Mart when he was engaged to install electrical wiring in the Buffalo store prior to its opening. He later made agreements with the Buffalo store and the Bolivar store to change ballasts in fluorescent lighting fixtures as-needed after Wal–Mart's home office instructed Wal–Mart store managers to permit only licensed electricians to perform such tasks. Prior to

this change in policy, Wal–Mart employees changed the ballasts.

There was no regular schedule for Busselle to inspect or change the ballasts at the Bolivar Wal–Mart. Busselle came in to change the ballasts when Wal–Mart contacted him. Mark Harmsworth, manager of the Bolivar Wal–Mart, testified that Busselle was contacted to change the ballasts "usually once a month or once every two months," although the store included the expense of Busselle's services in its monthly budget. Busselle testified that he performed the work "[w]henever they called me," which was "usually about every week or two."

The Bolivar Wal–Mart at the time of Busselle's injury was lighted by "probably more than hundreds" of fluorescent lights. Wal–Mart has the ballasts and fluorescent light bulbs changed at the same time, whenever the light bulbs "burn out." Pursuant to Wal–Mart's contract with Busselle, Wal–Mart provided the ballasts and light tubes, the ladder, and an employee to assist Busselle. Busselle used his own pliers and screwdrivers to change the lighting fixtures. The Wal–Mart employee would assist Busselle by moving the ladder and handing the light tubes and ballasts to Busselle.

Busselle's injury occurred on December 7, 1994, when he was trying to change a lighting fixture in the autobay in the automotive section of the Bolivar store. The ceiling in the autobay is higher than in the other areas of the Wal–Mart store, and the ladder Wal–Mart provided was not high enough for Busselle to reach the lighting fixture. Busselle attempted to reach the fixture by standing on a concrete block a Wal–Mart employee placed on top of the ladder. While Busselle was standing on the block to fix the light fixture, the block shifted. Busselle fell from the ladder and was injured.[1]

■ Busselle's injuries and medical bills are not in dispute. The only issue on appeal is whether Wal–Mart was the statutory employer of Busselle under § 287.040.1, RSMo 1994, and thus liable to Busselle for workers' compensation.

■ Decisions of the Labor and Industrial Relations Commission must be upheld if supported by competent and substantial evidence on the whole record. *Leslie v. School Services & Leasing, Inc.,* 947 S.W.2d 97, 99 (Mo.App.1997). Findings and awards of the Commission which are based on the interpretation of law, rather than the determination of facts, are subject to correction by the court. *Id.* "Where the facts are not in dispute as to the nature of the agreement and the work required by it, the existence or absence of statutory employment is a question of law for the courts to decide." *Bass v. National Super Markets, Inc.,* 911 S.W.2d 617, 621 (Mo.banc 1995), *cert. denied,* 517 U.S. 1208, 116 S.Ct. 1825, 134 L.Ed.2d 930 (1996).

Section 287.040.1, RSMo 1994, provides that

[a]ny person who has work done under contract on or about his premises which is an operation of the usual business which he there carries on shall be deemed an employer and shall be liable under this chapter to such contractor ... when injured or killed on or about the premises of the employer while doing work which is in the usual course of his business.

■ The purpose of this section is "to prevent employers from circumventing the requirements of the Act by hiring independent contractors to perform work the employer would otherwise perform." *Bass* at 619. The courts are to construe the statute liberally, "deciding close cases in favor of workers' compensation coverage." *Id.* *See also Leslie,* 947 S.W.2d at 99 (liberal

---

1. Busselle later died from causes unrelated to his injury. His widow and sole dependent, Edna Busselle, is pursuing this claim.

construction of Missouri's Workers' Compensation Act required "so as to extend its benefits to the largest possible class").

A court may find that an employer is a "statutory employer" if the injured party performed the work pursuant to a contract, the injury complained of occurred on or about the premises of the alleged statutory employer, and the work performed by the injured party was in the usual course of business of the alleged statutory employer. *See Bass* at 619 (Mo. banc 1995); *DiMaggio v. Johnston Audio/D & M Sound,* 19 S.W.3d 185, 189 (Mo.App.2000).

The first two elements are not at issue in this case. The parties agree that Wal–Mart orally contracted with Busselle to change the ballasts and light tubes on its fluorescent lighting fixtures and that Busselle was injured while performing such tasks within the Wal–Mart store. However, the parties dispute whether the work that Busselle performed was in the usual course of Wal–Mart's business.

The term "usual business" as used in § 287.040.1, RSMo 1994, refers to

those activities (1) that are routinely done (2) on a regular and frequent schedule (3) contemplated in the agreement between the independent contractor and the statutory employer to be repeated over a relatively short span of time (4) the performance of which would require the statutory employer to hire permanent employees absent the agreement.

*Bass,* 911 S.W.2d at 621; *see also DiMaggio,* 19 S.W.3d at 189–90.

In *Bass,* the court found that a supermarket was the statutory employer of the employee of a company who had an agreement with the supermarket to perform janitorial duties on a routine basis. The employee, who was killed during a robbery, was found to be performing work within the usual course of the supermarket's business when the injury occurred. The court noted that the supermarket

"would have had either to assign floor care duties to its staff or to hire a staff specifically to maintain its floors" absent its agreement with the independent contractor, as maintaining clean facilities was required by the Department of Health regulations under which the supermarket operated. *Id.* at 622.

By requiring that the activities be done on a regular and frequent schedule as contemplated in their agreement, the court in *Bass* excluded "specialized or episodic work that is essential to the employer but not within the employer's usual business as performed by its employees." Appellant argues that because there was no "set" routine or schedule by which Busselle would change the light tubes and ballasts, his work was not routine or frequent.

We do not think that a "set" routine is required to meet this element of the test enunciated in *Bass.* Busselle's work was routine in that he was routinely contacted whenever enough lights had burned out to make his time worthwhile, which, although the testimony differs, appears to have been at least once a month. Busselle would spend several hours changing the tubes and ballasts on each occasion that he came. Wal–Mart clearly anticipated that this work would be needed on a regular basis, as it included the expense in its monthly budget. The sheer number of lighting fixtures used in the store, and the necessity that they remain lit when the store was open suggest that the store would need to have the bulbs and ballasts changed repeatedly throughout the year.

Cases following the routine/frequent test that the *Bass* court cited in its opinion are instructive. *See Bass* at 620–21. Unanticipated repairs, remodeling, and episodic maintenance, such as painting water storage tanks, were all held to be outside the usual business of the employer. *See id.* These tasks clearly could not be "contemplated ... to be repeated over a relatively short span of time." In contrast, guard services, full-time maintenance of heating

and air-conditioning units, and floor sweeping were all tasks found to be within the usual business of the putative employer. *See id.* Although the facts here may fall in between these extremes, we believe that the work Busselle performed can more accurately be classified as "routine" in nature, as opposed to episodic. Close cases are decided for workers' compensation coverage. *See id.* at 621.

A case recently decided by the Eastern District that addresses the routine/frequent test merits consideration here. In that case, *Tullmann v. St. Louis Science Center*, 34 S.W.3d 860 (Mo.App.2001), the court held the Missouri Workers' Compensation Law did not apply to Midwest Woodworking's employee, Tullmann's, claim for damages for injuries sustained at work because the work performed was not the usual business of the putative employer, St. Louis Science Center. Tullmann's employer, Midwest Woodworking, an independent contractor, did a variety of carpentry work for St. Louis Science Center, some of which was needed routinely, such as building exhibit walls, and other which was episodic. There was no formal contract or agreement for the work; rather, a separate work order would be drawn up for each particular job. The Eastern District held that because there was no agreement contemplating the work to be performed, nor a regular and frequent schedule for the work, Midwest's work was not the usual business of St. Louis Science Center.

The facts of the present case are distinguishable from those in *Tullmann.* Here, there was a clear agreement between Wal–Mart and Busselle that Busselle would change the light tubes and ballasts at Wal–Mart as needed. The parties do not dispute that there was such an agreement, or that the work Busselle performed was the work contemplated by the agreement. The agreement did not have to be in writing. Although on one or two occasions, Busselle may have been contacted to do skilled electrical work not contemplated in his agreement with Wal–Mart, that is irrelevant here, as Busselle was injured while doing the work contemplated by the agreement.

The final factor of the routine/frequent test, that permanent employees of the putative employer would have to perform the work absent the employer's agreement with the independent contractor, also favors our finding that Wal–Mart was the statutory employer of Busselle. Prior to Wal–Mart's decision to have electricians perform the task of changing the ballasts and tubes, which Appellant suggests was "presumably for safety reasons," that work was done by Wal–Mart's regular employees. Even after Wal–Mart hired Busselle to change the ballasts, Wal–Mart would have a regular Wal–Mart employee assist in the task. Denying compensation would be contrary to the legislature's intent in adopting Section 287.040—"to prevent employers from avoiding their duties under the Act by contracting out work that their employees would normally do." *See Bass* at 621.

The award is affirmed.

BARNEY, C.J., and MITCHELL, S.J., concur.