**Matthew McGRATH,**
**Plaintiff/Appellant,**

v.

**VRA I LIMITED PARTNERSHIP,**
**Defendant/Respondent.**

No. ED 89815.

Missouri Court of Appeals,
Eastern District,
Division Four.

Jan. 29, 2008.

Marshall R. Hoekel, William K. Holland, Saint Louis, MO, for plaintiff/appellant.

Paul C. Hamill, Saint Louis, MO, for respondent/defendant.

SHERRI B. SULLIVAN, J.

### Introduction

Matthew McGrath (McGrath) appeals from the circuit court's judgment dismissing his petition for lack of subject matter jurisdiction. We affirm.

### Factual and Procedural Background

Interstate Property Services (Interstate) provides property management services to property owners in St. Louis County, Missouri. On August 12, 1993, Interstate entered into a Housing Management Agreement (Agreement) with VRA to provide property management services to the Village Royale Apartments (Village Royale), a property owned by VRA.

Pursuant to the terms of the Agreement, Interstate agreed it would cause the property at Village Royale to "be maintained and repaired in accordance with the Management Plan and local codes, and in a condition at all times acceptable to the Owner, the Secretary, and MHDC, including but not limited to cleaning, painting, decorating, plumbing, carpentry, grounds care, and such other maintenance and repair work as may be necessary, subject to any limitations imposed by the Owner in addition to those contained herein." The Agreement further provided that "[s]pecial attention will be given to preventive maintenance, and to the greatest extent feasible, the services of regular maintenance employees will be used." In order to carry out the terms of the Agreement, Interstate hired maintenance workers to perform the work at Village Royale.

As the property manager, Interstate routinely cleaned and renovated apartment units at Village Royale as they were vacated, and prior to leasing the unit to a new tenant. This renovation included: (a) replacing kitchen cabinets; (b) removing and replacing appliances as needed; (c) repairing and replacing kitchen and bathroom tile; (d) re-caulking countertops and tubs; (e) repairing and replacing window blinds; (f) adjusting and lubricating windows; (g) replacing bathroom mirrors and vanities; (h) repairing and replacing plumbing and electrical fixtures; (i) checking the operation of HVAC, and replacing filters; (j)

repairing and replacing doors and door hardware; and (k) replacing deck boards.

Interstate hired McGrath as a maintenance worker in 2004 to perform maintenance work at Village Royale and other properties Interstate managed in the St. Louis area. On November 3, 2006, McGrath fell through a stairway at Village Royal and sustained a back injury. At that time, McGrath was a full-time hourly employee who spent 75% of his work day at Village Royale and the remainder of his time at other job sites.

In his affidavit McGrath stated he engaged in the demolition and remodeling of apartments at Village Royal. At the time of his injury, McGrath was carrying an old hot water heater from a recently vacated apartment unit down the stairs to dispose of it. McGrath averred he was hired based upon his construction, demolition, and remodeling experience for the express purpose of demolishing existing fixtures and erecting improvements upon the premises of Village Royale.

McGrath stated the Village Royale demolition projects included: (a) tearing out cabinets; (b) removing air conditioners; (c) detaching and removing hot water heaters; (d) demolishing and removing toilets; (e) removing furnaces; (f) demolishing and removing sinks; (g) tearing out existing flooring; and (h) tearing out existing drywall. McGrath stated he also erected "improvements" to the apartment buildings including the installation of: (a) water heaters; (b) electrical wiring for canned lighting; (c) plumbing pipes; (d) sinks and garbage disposals; (e) vinyl floors; (f) toilets; (g) vanities; (h) medicine cabinets; (i) bathroom lighting; (j) water faucets; (k) drywall; (*l*) microwave ovens; (m) new copper electrical supply lines; (n) new PVC drain lines; and (o) updated wall outlets with Ground Fault Interrupter outlets to comply with the county building code.

McGrath believed the apartments were erected in the 1970s and had not been remodeled since then. McGrath stated the remodeling project encompassed the entire apartment complex and that his efforts significantly improved the appearance, functionality, and value of the apartments. McGrath believed his employment with Interstate would be limited in time and scope, and once all the apartments were remodeled, he was unsure whether Interstate would continue employing him.

Steve Renner (Renner), Interstate's Maintenance Supervisor and McGrath's immediate supervisor, regularly assigned McGrath work and instructed him on how to do the work that needed to be done. Renner averred Interstate never "demolished" an apartment unit and was not hired to do so. Instead, Renner stated that McGrath was involved in renovating the apartment units that were recently vacated and updating them with new appliances. James Guidry, Interstate's President, attested McGrath sustained his injuries while performing work pursuant to the Agreement and that McGrath was performing work which would have been performed by a VRA employee if VRA had not entered into the Agreement with Interstate to have Interstate perform these services.

On March 7, 2007, McGrath filed an amended petition for personal injury. On April 6, 2007, VRA filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction (VRA's Motion) alleging the circuit court did not have subject matter jurisdiction to hear the case because VRA was the statutory employer of McGrath whose exclusive remedy lies under the Workers Compensation statutes. On March 16, 2007, the circuit court granted VRA's Mo-

tion and dismissed McGrath's petition for lack of subject matter jurisdiction.

### Points on Appeal

In his first point on appeal, McGrath argues the circuit court erred in granting VRA's Motion because McGrath was not a statutory employee at the time of his injury in that he was engaged in construction activities which were not in the usual course of the putative statutory employer's business.

In his second point on appeal, McGrath argues the circuit court erred in granting VRA's Motion because McGrath was exempt from the statutory employment exclusive remedy provision in that, at the time of his injury, McGrath was erecting capital improvements upon the land.

### Standard of Review

■ A motion to dismiss should be granted where it appears, by a preponderance of the evidence, that the circuit court lacks subject matter jurisdiction. *Howell v. Lone Star Industries, Inc.*, 44 S.W.3d 874, 877 (Mo.App. E.D.2001). The movant bears the burden of proving the court lacks jurisdiction. *Id.*

■ The determination of whether a case falls within the exclusive jurisdiction of the Labor and Industrial Relations Commission (Commission) is a question of fact, left to the sound discretion of the trial judge. *Id.* We will not reverse the circuit court absent an abuse of its discretion. *Id.* The circuit court abuses its discretion when the "ruling is clearly against the logic of the circumstances and is so arbitrary and unreasonable that it shocks the sense of justice and indicates a lack of careful consideration." *Id.*

■ The Workers Compensation statute is to be construed liberally with close questions of jurisdiction being decided in favor of workers' compensation coverage. *Id.* However, the statute must be strictly construed when existing common law rights are affected, with close questions being weighted in favor of retaining the common law right of action. *Id.* at 878.

### Discussion

■ First, McGrath argues the circuit court erred in granting VRA's Motion because McGrath was not a statutory employee at the time of his injury, in that he was engaged in construction activities which were not in the usual course of VRA's business. The circuit court found McGrath was injured on VRA's premises while performing work pursuant to the Agreement and that the work was in VRA's usual course of business.

■ Statutory employment exists when: "(1) the work is performed pursuant to a contract; (2) the injury occurs on or about the premises of the alleged statutory employer; and (3) the work is in the usual course of business of the alleged statutory employer." *Bass v. National Super Markets, Inc.*, 911 S.W.2d 617, 620 (Mo. banc 1995); Section 287.040.1.[1]

The parties do not dispute that the work was performed by McGrath pursuant to a contract, i.e. the Agreement, or that the injury occurred on VRA's premises. The issue is whether McGrath was performing work within the usual course of VRA's business.

■ An employer's "usual business" as defined in Section 287.040.1 are those activities: "(1) that are routinely done (2) on a regular and frequent schedule (3) contemplated in the agreement between the independent contractor and the statu-

---

1. All statutory references are to RSMo 2005, unless otherwise indicated.

tory employer to be repeated over a relatively short span of time (4) the performance of which would require the statutory employer to hire permanent employees absent the agreement." *Bass*, 911 S.W.2d at 621. The court must review the agreement between the putative employer and the independent contractor as a whole in determining the existence of statutory employment. *Id.*

The Agreement provided that Interstate maintain and repair the property and perform activities such as, but not limited to, "cleaning, painting, decorating, plumbing, carpentry, grounds care, and such other maintenance and repair work as may be necessary[.]" Interstate also agreed to give "special attention" to preventive maintenance and to use regular maintenance employees when feasible. In order to carry out the terms of the Agreement, Interstate hired maintenance workers, including McGrath, to perform the maintenance work at Village Royale.

While McGrath characterized his work as the demolition of existing fixtures and the erection of improvements as part of an isolated and unique remodeling project, Guidry stated McGrath's work was routinely performed by Interstate maintenance workers to prepare the apartments for new tenants. Also Renner stated Interstate did not perform demolition work but instead renovated recently vacated apartments and updated them with new appliances.

We find that in this case, the work performed by McGrath was maintenance work, including preventative maintenance, contemplated by the Agreement. Although McGrath was not repeatedly performing the same tasks at the same apartment on a set schedule, he did routinely perform maintenance and repairs to the apartment complex on a regular and frequent basis by addressing the needs of each apartment as it became vacant. The renovations and repairs done to the apartments were in preparation for new tenants and constitute the usual and ordinary work of an apartment complex owner such as VRA. Had VRA not entered into a contract with Interstate or another entity, VRA would have had to hire permanent employees to perform the maintenance work. The circuit court did not err in finding that McGrath was a statutory employee, at the time of the accident, engaged in activities in the usual course of VRA's business. Based on the foregoing, McGrath's first point is denied.

■ Next, McGrath argues the circuit court erred in granting VRA's Motion because he was exempt from the statutory employment exclusive remedy provision in that, at the time of his injury, he was erecting capital improvements upon the land.

Section 287.040.2 sets forth an exception to the definition of the statutory employer:

The provisions of this section shall not apply to the owner of premises upon which improvements are being erected, demolished, altered or repaired by an independent contractor but such independent contractor shall be deemed to be the employer of the employees of his subcontractors and their subcontractors when employed on or about the premises where the principle contractor is doing work.

Section 287.040.2

■ The exception set forth in Section 287.040.2 does not apply in this case. Rather this exception applies in situations where a property owner hires an independent contractor to build him a house so that the property owner is not made an "employer" of the workmen on the job. *James v. Union Electric Company*, 978 S.W.2d 372, 375–76 (Mo.App. E.D.1998).

Assuming *arguendo* that Section 287.040.2 did apply in this case, McGrath's activities do not amount to making improvements to the land.

■ An improvement is a " 'permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs.' " *James,* 978 S.W.2d at 376, quoting *State v. Neill,* 397 S.W.2d 666, 669 (Mo. banc 1966). An improvement is also defined as " 'work done or things built or placed upon land, rendering it more fit for use, and more capable of producing income.' " *Howell,* 44 S.W.3d at 878, quoting *Huff v. Union Electric Co.,* 598 S.W.2d 503, 510 (Mo.App. E.D.1980).

McGrath's removal of a hot water heater that had exceeded its useful life, as well as McGrath's other activities, constitutes routine maintenance of the building, not a "permanent addition" or "betterment" of the land or real property. Nor did McGrath's activities render the land "more fit for use" or "more capable of producing income" but instead were intended to maintain the property for its current use. The circuit court did not err in finding McGrath was not erecting capital improvements upon the land at the time of his injury. Based on the foregoing, McGrath's second point is denied.

### Conclusion

The judgment of the circuit court is affirmed.

MARY K. HOFF, P.J., and GEORGE W. DRAPER III, J., concur.