Alan Joseph OLENDORFF, Appellant,

v.

ST. LUKE'S EPISCOPAL–PRESBYTE-
RIAN HOSPITALS d/b/a St. Luke's
Hospital, Respondent,

and

Shipping Utilities, Inc., Defendant.

No. ED 92033.

Missouri Court of Appeals,
Eastern District,
Division One.

Aug. 18, 2009.

John J. Hummel, Michael A. Gross, St. Louis, MO, for appellant.

Jeffrey McPherson, David G. Ott, Anna T. Selby, St. Louis, MO, for respondent.

PATRICIA L. COHEN, Judge.

## OPINION

Alan Olendorff (Plaintiff) appeals from the trial court's judgment dismissing his negligence action against St. Luke's Hospital on the grounds that St. Luke's was Plaintiff's statutory employer within the meaning of Section 287.040 RSMo. We affirm.

### Background

The record reflects that Plaintiff was a general carpentry foreman employed by McCarthy to perform work on St. Luke's campus. The campus consisted of 500,000 square feet, seven buildings, three garages, surface parking lots, roadways, and over 200,000 square feet of office space. Managing and maintaining the property involved renovating, remodeling, repairing and cleaning office spaces, buildings and garages. St. Luke's used its own maintenance employees as well as McCarthy employees to perform the aforementioned tasks. McCarthy had a permanent office at St. Luke's where employees reported for work on a daily basis. In 2000, McCarthy and St. Luke's executed a written agreement governing their business arrangement. The agreement consisted of a general construction contract, a continuing service contract, and "work orders" issued for specific projects. The majority of the work involved cleaning, remodeling, and preparing office spaces when medical practices entered or left office buildings located on the campus. The construction contract provided that McCarthy had the discretion to accept and invoice projects of a "materially different nature" pursuant to a "change order."

In October 2003, St. Luke's issued a work order for the installation of a new height restrictor in its east parking garage. St. Luke's administrator testified that this was one of hundreds of projects that McCarthy performed at St. Luke's on a continuous basis and that, if McCarthy had not accepted the project, then St. Luke's would have hired additional employees to perform the work. In early August 2004, Plaintiff installed the restrictor using hardware that was ill-fitted to hold permanently. The following week, Plaintiff returned with new hardware to secure the apparatus. During that task, Plaintiff was injured when the truck-based scissor-lift he was using elevated suddenly, collapsed and pitched him approximately 15 feet to the pavement.

Plaintiff filed a personal injury claim against St. Luke's and the truck manufacturer. St. Luke's filed a motion to dismiss for lack of subject matter jurisdiction, alleging that Plaintiff was St. Luke's statutory employee and therefore workers' compensation was Plaintiff's exclusive remedy. The trial court granted the motion and dismissed Plaintiff's claims against St. Luke's. Plaintiff appeals.

### Standard of Review

■■ A motion to dismiss for lack of subject matter jurisdiction is a proper means of raising the workers' compensation law as a defense to a common law tort action. *Harris v. Westin Mgmt. Co. East*, 230 S.W.3d 1, 3 (Mo. banc 2007).[1] The action shall be dismissed if it appears by a preponderance of the evidence that the court is without jurisdiction. *Id.* We will not reverse the circuit court absent an abuse of discretion. *McGrath v. VRA I Ltd. P'ship*, 244 S.W.3d 220, 224 (Mo.App. E.D.2008).

### Discussion

In his first point, Plaintiff contends that the trial court erred when it concluded that St. Luke's was Plaintiff's statutory employer. More specifically, Plaintiff argues that he was injured performing work that was not part of the "usual business" of St. Luke's and therefore St. Luke's was not his statutory employer.

■ Section 287.040.1 defines statutory employer as follows:

Any person who has work done under contract on or about his premises which is an operation of the usual business which he there carries on shall be deemed an employer and shall be liable under this chapter to such contractor, his subcontractors, and their employees while doing work which is in the usual course of his business.

Thus, statutory employment exists under the following circumstances: "(1) the work is performed pursuant to a contract; (2) the injury occurs on or about the premises of the alleged statutory employer; and (3) the work is in the usual course of the alleged statutory employer's business." *State ex rel. MW Builder's Inc. v. Midkiff*, 222 S.W.3d 267, 270 (Mo. banc 2007).

■ The issue presented here is whether Plaintiff performed work in the usual course of St. Luke's business when he was changing hardware on the previously installed height restrictor.[2] For purposes of Section 287.040.1, "usual business" means activities "(1) that are routinely done; (2) on a regular and frequent schedule; (3) contemplated in the agreement between the independent contractor and the statutory employer to be repeated over a relatively short span of time; and (4) the performance of which would require the statutory employer to hire permanent employees absent the agreement." *McGrath*, 244 S.W.3d at 224 (Mo.App. E.D.2008) (quoting *Bass v. Nat. Super Mkts., Inc.*, 911 S.W.2d 617, 621 (Mo. banc 1995)). Plaintiff contends that the work at issue was neither: (1) done on a regular or frequent basis; nor (2) contemplated by the contract to be performed repeatedly in a short time; and (3) St. Luke's would not be required to hire permanent employees to perform the work.

The essence of Plaintiff's argument with respect to the "regular or frequent" element of "usual business" is that the work he was performing at the time of his injury constituted new construction rather than maintenance work. More specifically,

---

1. We note that *Harris'* holding that a motion to dismiss for lack of subject matter jurisdiction is the proper method to raise workers' compensation exclusivity is an issue currently before the Supreme Court in *McCracken v. Wal–Mart Stores East, LP*, No. SC 90050. Because the issue is yet to be resolved, we proceed to review the merits of the trial court's dismissal under the guidance provided in *Harris*.

2. There appears to be some disagreement about the nature of Plaintiff's work at the time of the injury. The record supports a conclusion that Plaintiff had installed the height restrictor approximately a week previous to his injury and was simply changing hardware on the newly installed height restrictor when he sustained his injury.

Plaintiff argues that during the period of McCarthy's contract, St. Luke's had never before issued a work order for installation of a height restrictor and thus Plaintiff's work on the height restrictor was not routine. In support of this argument, Plaintiff relies on two cases: *Murry v. Mercantile Bank, N.A.*, 34 S.W.3d 193 (Mo.App. E.D.2000) and *Tullman v. St. Louis Science Center Foundation*, 34 S.W.3d 860 (Mo.App. E.D.2001). We are not persuaded by either of these cases.

In *Murry*, the plaintiff, who worked for a maintenance contractor providing cleaning services for Mercantile Bank, was asked to move a 5,000 pound safe. 34 S.W.3d at 195. The court upheld the trial court's determination that employees, such as the plaintiff, were not directed routinely to move safes. *Id.* at 198. Here, by contrast, McCarthy employees routinely performed maintenance on structures on the St. Luke's campus. Even assuming, *arguendo*, that McCarthy did not regularly install height restrictors, the record supports the trial court's determination that changing hardware on the height restrictor a week after it was installed is the type of maintenance work contemplated by and regularly performed pursuant to the contract.

*Tullmann* is likewise inapposite. In *Tullmann*, the court focused on the relationship between the plaintiff's work when injured and the nature of the agreement between the plaintiff's employer, Midwest, and the putative statutory employer, Science Center. Unlike here, the employers in *Tullmann* did not have an agreement contemplating the work to be performed. 34 S.W.3d at 861. Indeed, the Science Center and Midwest "operated under no formal agreement or contract for work." *Id.* Rather, Science Center called Midwest "sporadically" and would create a work order for the specific job. *Id.* at 862. In this case, by contrast, St. Luke's and McCarthy had a detailed contract covering maintenance work, Plaintiff worked daily at St. Luke's, and was performing maintenance work assigned to him by a routine work order at the time he was injured.

In support of its position that Plaintiff was injured while performing work constituting its usual business, St. Luke's relies primarily on *McGrath*, supra. We agree that *McGrath* is instructive. Similar to this case, the plaintiff's employer, Interstate, entered into a maintenance agreement with an apartment complex. 244 S.W.3d at 224. The plaintiff injured himself while moving a water heater from a vacant apartment. *Id.* The plaintiff argued, as Plaintiff does here, that the project he was engaged in when he was injured was "isolated and unique." *Id.* at 225. In rejecting his argument, the court noted that although the plaintiff had not repeatedly performed the specific jobs on a set schedule, he routinely performed maintenance for the complex. *Id.*

Plaintiff next argues that the contract did not contemplate that the "specific injury-producing construction activity" would be performed over a short time span. In particular, Plaintiff argues that "[h]eight restrictors [were] not mentioned in the contract" and St. Luke's "issued only one work order related to height restrictor's since contracting with McCarthy in 2000." Even assuming, the "injury-producing" activity was installation of the height restrictor rather than changing hardware on a previously-installed height restrictor, *McGrath* establishes that the specific activity in question does not need to be explicitly described in order to fall within the purview of statutory employment. *Id.* In *McGrath*, the contract did not specifically state that moving water heaters would be considered maintenance. Here, likewise, we do not view the absence of a specific provision in the contract providing for either the installation or maintenance

 

of height restrictors as fatal to St. Luke's contention.[3]

Plaintiff's final contention is that St. Luke's produced insufficient evidence that it would have had to hire permanent employees to install the height restrictor in the absence of the continuing services agreement. In support of his contention, Plaintiff argues that the evidence establishes only that St. Luke's would have had to hire employees, but not necessarily permanent employees given that the height restrictor installation was a one-time project. Again, Plaintiff focuses entirely on the facts surrounding the project he worked on a week before he was injured, stating, for instance, "that there is no evidence that St. Luke's planned to install any other height restrictors." At the time of his injury, Plaintiff was not constructing the height restrictor, but even if he was, the fact that St. Luke's had no other height restrictor projects planned is not determinative of whether a permanent St. Luke's employee would have handled this project in the absence of the McCarthy contract.

Point denied.

■ In his second point, Plaintiff asserts that the trial court erred in granting St. Luke's motion to dismiss because the provisions of Section 287.040.2 do not apply to injuries sustained by an employee engaged in a capital improvement project. St. Luke's responds that, first, Plaintiff's point is not preserved for appeal and, second, Section 287.040.2 does not apply because the height restrictor is not a capital improvement within the meaning of the applicable statute.

The record reveals that Plaintiff never advanced this argument before the trial court. Plaintiff's point is not preserved for appellate review. *Seldomridge v. General Mills Operations, Inc.,* 140 S.W.3d 58, 62 (Mo.App. W.D.2004). Therefore, we do not reach the merits of Plaintiff's argument. Point dismissed.

### *Conclusion*

The trial court's judgment is affirmed.

KURT S. ODENWALD, P.J., and GLENN A. NORTON, J., concur.

■

---

**3.** The McCarthy and St. Luke's contract provided a mechanism for handling jobs outside of the contemplation of the contract. If a project was of a "materially different nature", a "change order" rather than a "word order" was to be used. At the time of his injury, Plaintiff was working pursuant to a "work order."