**Terrill SELL, Respondent,**

v.

**CARLISLE POWER TRANSMISSION PRODUCTS, INC., Appellant.**

**No. SD 29510.**

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 29, 2009.

Motion for Rehearing or Transfer Denied
Oct. 21, 2009

Application for Transfer Denied
Dec. 22, 2009.

Randy P. Scheer, Kenneth A. Sprenger, Springfield, David L. Schenberg, Husch

Blackwell Sanders LLP, St. Louis, for Appellant.

William W. Francis, Jr., Ryan E. Murphy, Placzek & Francis, Springfield, for Respondent.

DANIEL E. SCOTT, Chief Judge.

Terrill Sell (Plaintiff) slipped on a slick ladder at Carlisle's manufacturing plant. He was injured, sued Carlisle, and won a money judgment. Although Carlisle raises six points on appeal, we need consider only the first.

Carlisle asserts that Plaintiff was its statutory employee under § 287.040[1] of the Worker's Compensation Act:

> Any person who has work done under contract on or about his premises which is an operation of the usual business which he there carries on shall be deemed an employer and shall be liable under this chapter to such contractor, his subcontractors, and their employees, when injured or killed on or about the premises of the employer while doing work which is in the usual course of his business.

§ 287.040.1.[2] If so, Plaintiff's sole remedy is under the Act. *Seldomridge v. General Mills Operations, Inc.*, 140 S.W.3d 58, 62 (Mo.App.2004).

However, these provisions do not apply when "improvements are being erected, demolished, altered or repaired by an independent contractor." § 287.040.2. Plain-

---

1. Statutory references are to RSMo, as amended 2005. The "improvements exception" considered herein was § 287.040.3 at the time of this accident, but in 2005 was moved to § 287.040.2 with no language change.

2. Thus, statutory employment exists when (1) the work is pursuant to contract; (2) the injury occurs on or about the premises of the alleged statutory employer; and (3) the work is in the usual course of business of the alleged statutory employer. *Bass v. Nat'l Super Markets, Inc.*, 911 S.W.2d 617, 619–20 (Mo. banc 1995). This is to prevent employers from circumventing the Act by hiring independent contractors to do work the employer otherwise would have its own employees perform. *Id.* at 619.

tiff claims this exception applies and, thus, that he can sue Carlisle civilly. "When a person is hurt while working on an improvement, section 287.040 does not apply...." *Seldomridge,* 140 S.W.3d at 63.

The issue, therefore, is whether the improvements exception [3] applies. We conclude that it does not.

### Facts and Background

Rust Constructors ("Rust"), an independent contractor, provided maintenance services at Carlisle's Springfield plant per written agreement. Rust maintained the 20-acre plant and its 2,000 machines around the clock, completing over 1,000 work orders per month, without which Carlisle could not operate. Although the plant once employed its own maintenance staff, Rust had performed the plant's maintenance work since 1992, and Plaintiff had done so as a Rust employee since 1997.

Plaintiff, a Rust maintenance leadman, was hurt while fixing a hydraulic leak at the plant. He recovered workers' compensation benefits, then sued Carlisle.[4] Trial testimony showed that Plaintiff's work had been under the Carlisle–Rust contract; was within Rust's regular maintenance program to keep machines functional and the plant in production; and thus, was part of and essential to Carlisle's usual business.

### The "Improvements Exception" to Statutory Employment

■ Unless the improvements exception applies, this is a classic case of statutory employment. Plaintiff really has not argued otherwise, either here or in the trial court. Therefore, we turn to cases considering that exception, beginning with *Atlas Powder,* in which a contractor's steamfitter was injured at a 2,000-acre explosives plant with miles of above-ground pipes conveying sulfuric acid. 136 F.2d at 446–47. The Eighth Circuit reversed the steamfitter's civil judgment and rejected an argument mirroring that of Plaintiff here:

> It may be said in a certain sense that all of the miles of pipe lines on defendant's premises are "improvements" thereon, and that whenever its pipes are eaten out by the acids and are replaced in the usual course of business, or whenever an increase in the volume of acids produced requires more pipes to carry it, that "improvements are demolished, altered, repaired or erected," but plainly subsection (c) [now § 287.040.2] permits of no such interpretation here.
>
> Subsection (c) is intended to apply to a situation where a property owner procures an independent contractor to build him a house or such like improvement, to tear one down or make alterations or repairs upon one.

*Id.* at 448. Our supreme court and this court's other districts have echoed this "build him a house" interpretation. *See West v. Posten Const. Co.,* 804 S.W.2d 743, 745 (Mo. banc 1991);[5] *Boshears v. Saint-*

---

**3.** This convenient term was coined in *Seldomridge,* 140 S.W.3d at 62–64. Yet we acknowledge this may be less an "exception" to § 287.040 than the legislature's confirmation that a landowner who hires a contractor "to build him a house," etc. (*Atlas Powder Co. v. Hanson,* 136 F.2d 444, 448 (8th Cir.1943)), not in the usual course of the landowner's business, falls outside § 287.040.1's intended

scope and should not be swept into the category of "statutory employer."

**4.** The Carlisle–Rust maintenance contract required Rust to provide workers' compensation insurance for its employees and Carlisle to reimburse Rust for the cost thereof.

**5.** *West* is one of many cases partially overruled on an unrelated issue by *Hampton v.*

*Gobain Calmar, Inc.,* 272 S.W.3d 215, 222 (Mo.App.2008)(as part of a quote from West); *Distefano v. Saint–Gobain Calmar, Inc.,* 272 S.W.3d 207, 213 (Mo.App. 2008)(same); *James v. Union Elec. Co.,* 978 S.W.2d 372, 375–76 (Mo.App. 1998)(same). *See also McGrath v. VRA I Ltd. Partnership,* 244 S.W.3d 220, 225 (Mo.App.2008)(same interpretation, but citing *James,* supra). Thus, we follow established precedent in applying the same principles.

Also, oft-said in this context is that "improvement" means "work done or things built or placed upon land, rendering it more fit for use, and more capable of producing income" or "a permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable *as distinguished from ordinary repairs* " (our emphasis). *McGrath,* 244 S.W.3d at 226 (quoting multiple cases).

■ Taken together, the foregoing principles indicate that capital improvements and construction activities that render real estate more useful, more valuable, more fit for use, or more capable of producing income may qualify for the improvements exception, but ordinary repairs will not. Two Eastern District cases authored by Judge Sullivan so illustrate and seem to bracket the improvements exception's general scope.

In the first case, *Howell v. Lone Star Industries, Inc.,* 44 S.W.3d 874 (Mo.App. 2001), the decedent's employer contracted to strip a half-acre of Lone Star's property, construct and repair gravel roads

thereon, remove trees and 1,500 feet of fence, and gravel a 3,800 square foot area. The decedent was killed in the course of such work. Citing the "improvement" definitions above, the exception was deemed applicable. The accident occurred during construction-type work that bettered the real property; made it more useful and valuable "because it now had a purpose;" enhanced its capital value and rendered it more capable of producing income; and notably, "did not constitute ordinary repairs." *Id.* at 878–79.

By contrast, *McGrath* involved a company that contracted to maintain and repair an apartment complex, and whose employee was hurt while removing a water heater from a vacated unit. The Eastern District and Judge Sullivan found that "Section 287.040.2 does not apply in this case. Rather this exception applies in situations where a property owner hires an independent contractor to build him a house. . . ." *Id.* at 225. Moreover, the plaintiff's activities did not fit the improvements definitions above. They involved no permanent addition to or betterment of the real property, but "routine maintenance." *Id.* at 226. Thus, they "were intended to maintain the property for its current use," as opposed to rendering the land more fit for use or more capable of producing income. *Id.*

Plaintiff's own evidence puts his case much closer to *McGrath* and maintenance/repair cases like *Kennedy v. J.D. Carson Co.,* 149 S.W.2d 424 (Mo.App.1941), *abrogated on other grounds by Bass,* 911 S.W.2d at 620–21,[6] than construction-type

---

*Big Boy Steel Erection,* 121 S.W.3d 220, 224–32 (Mo. banc 2003).

**6.** *Kennedy* rejected a claim that an elevator repairman's work, under contract for the Carson Company, fell within the improvements exception:

There was no evidence that the Carson Company was the "owner of premises upon which improvements [were] being erected, demolished," etc. by an independent contractor as provided in said subsection (c) [now § 287.040.2]. The work being done by

cases like *Howell*. Here, Plaintiff's employer contracted to maintain and repair some 2,000 machines at Carlisle's plant. Plaintiff described his job as "maintenance work on the machines in the plant;" "repairing and setting new machines and stuff like that;" and "repairs of equipment." He was to "[k]eep all the machines running, repair them if they broke down, [and] install new machines if they needed to be installed." Day in and day out, he would "work on, for example, the pots, wrappers, build machines, extruders, the Banbury, Callendars. Just pretty well whatever broke down, we'd fix." Hydraulic leaks were frequent, common, and repaired in the ordinary course of plant activities to stay in production. Plaintiff testified that "minor stuff" like hydraulic leaks in pot pits was not uncommon, since "quite a few" plant machines were hydraulic and "whenever you have hydraulics, you are going to have hydraulic leaks and need for repairs."

*Seldomridge*, a repair case of sorts, strengthens the point. There, the Stellar Group's contract to construct a building and production lines to expand GMI's plant included a one-year warranty. A Stellar Group employee was injured while fixing a compressor during the warranty period, yet his work fit § 287.040.2 since it was not "ordinary repair" work, but was tied to the construction agreement:

> [W]hen looking at the circumstances as a whole, the warranty repair work was part of the entire contract between Stellar Group and GMI for the expansion to the facility. GMI did not contract with Stellar Group purely to provide "ordinary repair" services or maintenance for the compressors. GMI contracted with Stellar Group to design and build the expansion. The warranty was provided as a part of that contract and for a limited time after the contract was completed. . . . So any work done based on that [warranty] is still a part of the improvements made by Stellar Group.

140 S.W.3d at 63. The *Distefano* and *Boshears* cases cited by Plaintiff also involved construction and renovation of a manufacturing plant (*see* 272 S.W.3d at 209, 272 S.W.3d at 219), not ordinary repair and maintenance of plant equipment as in this case.

Thus, the case law tends to apply the improvements exception to construction-type situations—*i.e.*, the property owner who hires a contractor "to build him a house or such like improvement, to tear one down or make alterations or repairs upon one"—and not to ordinary repair and maintenance of equipment or chattels. The latter holds true, nearly without exception, even for elevators, pipes, and water heaters that might be fixtures or improvements in some property-law contexts.[7]

Having carefully surveyed the case law, Point I is well-taken and dispositive. Plaintiff was Carlisle's § 287.040 statutory employee; § 287.040.2's improvements exception did not apply; thus, Plaintiff could not sue Carlisle in tort. We need not

---

respondent was adjusting or maintenance work on the elevator. He was not erecting or demolishing any improvement on the premises. Respondent had done such service work on prior occasions at the store of the Carson Company. At the time of his injury he was making an adjustment which was a part of the regular work which his agreement required him to do.
149 S.W.2d at 427–28.

7. The exception is *James*, which on this issue seems to go farther than and arguably conflicts with all other relevant cases. Also, the statements in question in *James* were unnecessary to the result, which was reached on a different ground. 978 S.W.2d at 376–77. Thus, we will follow the weight of Missouri authority.

reach or express any opinion about Carlisle's other points. We reverse the judgment and remand with instructions to enter judgment for Respondent Carlisle.[8]

BARNES, S.J., and RAHMEYER, J., concur.

**8.** Plaintiff's motion to dismiss, taken with the