# United States Court of Appeals
### For the Eighth Circuit
_____

No. 23-3528
_____

Trenton D. Johnson

*Plaintiff - Appellant*

v.

Exide Technologies, Inc.

*Defendant - Appellee*
_____

Appeal from United States District Court
for the Western District of Missouri - St. Joseph
_____

Submitted: September 24, 2024
Filed: May 8, 2025
_____

Before SMITH, ERICKSON, and STRAS, Circuit Judges.
_____

STRAS, Circuit Judge.

In Missouri, who is responsible for injuries suffered by an independent contractor on the job site? The answer here is his "statutory employer," the owner of the plant where he was working, but only for workers' compensation benefits. *See* Mo. Rev. Stat. § 287.040.1.

I.

Trenton Johnson suffered a serious injury at Exide Technologies, Inc.'s plant in Kansas City, Missouri. He was there to perform maintenance work on behalf of Concorp, Inc. Some of the work involved servicing previously installed machinery. Other tasks came from a "dynamic list." Either way, Exide paid Concorp, which then compensated its own employees, including Johnson.

Johnson's injury occurred while he was replacing a belt inside a conveyor that Concorp had installed months earlier. It required him to climb onto a lead oven located directly over a vat of molten lead. While loosening the bolts holding the belt in place, Johnson "lost his footing" and fell in, which caused severe burns to his lower body.

After he healed from his injuries, Johnson sued Exide for negligence in Missouri state court. Next came removal to federal court, where the parties conducted extensive discovery and briefed whether Johnson's exclusive remedy was a claim for benefits under Missouri's workers' compensation system. The district court[1] concluded it was and granted summary judgment to Exide.

II.

We review the decision to grant summary judgment de novo. *See Fritz v. Henningar*, 19 F.4th 1067, 1069 (8th Cir. 2021). "[It] is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, shows no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Id.* (citation omitted). Unsupported assertions of "controverted" facts, however, cannot create a genuine dispute for trial. *See* Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) ("[T]here is no

---

[1]The Honorable Greg Kays, United States District Judge for the Western District of Missouri.

issue for trial unless there is *sufficient evidence* favoring the nonmoving party for a jury to return a verdict for that party." (emphasis added) (citation omitted)).

Summary judgment here depends on whether Exide and Johnson had an employer-employee relationship under Missouri's workers' compensation statute. If they did, Exide has an affirmative defense to Johnson's negligence claim based on Missouri's workers' compensation system, which would "provide[] the exclusive remedy" for the on-the-job injuries he suffered. *See State ex rel. KCP & L Greater Mo. Operations Co. v. Cook*, 353 S.W.3d 14, 21 (Mo. Ct. App. 2011).

One way to establish employee status is through the means/control test: did the alleged employer have the person under a "contract of hire, express or implied, oral or written" and have "the right to control the means and manner of the service"? *Chouteau v. Netco Constr.*, 132 S.W.3d 328, 332 (Mo. Ct. App. 2004) (applying Mo. Rev. Stat. § 287.020.1). If anyone had this type of relationship with Johnson, it was Concorp, not Exide.

The second possibility relies on a legal fiction, what Missouri law calls "statutory[-]employee" status, aimed at preventing employers from avoiding their workers' compensation obligations by hiring independent contractors. *Bass v. Nat'l Super Mkts., Inc.*, 911 S.W.2d 617, 619, 621 (Mo. banc 1995). Statutory employees are limited to workers' compensation benefits if they have suffered injuries for work (1) "on or about" an employer's premises, (2) performed "under [a] contract," and (3) in "the usual course of [the employer's] business." Mo. Rev. Stat. § 287.040.1. We focus only on the last two requirements because everyone agrees that Johnson's injuries occurred at Exide's plant.

A.

We start with the contract requirement. It does not take much, and even an oral or implied contract will do. *See State ex rel. J.E. Jones Constr. Co. v. Sanders*, 875 S.W.2d 154, 157 (Mo. Ct. App. 1994) (applying § 287.040.1 to contracts that

"are written or oral, express or implied"); *id.* (explaining that the word "'contract' . . . should be interpreted broadly" under the workers' compensation statute). Here, there is unrebutted evidence of an oral understanding between Exide and Concorp that eventually turned into an implied contract.

Concorp's president described how it worked. The company sent employees to the plant several times a week at Exide's request to complete "many different jobs." The agreement may have been "gray and fluid," as he put it, but it lasted nearly a year and covered "whatever work Exide required Concorp to perform."[2] They would then "settle up afterwards." *See id.* (observing that a contract may form "through the offeree's conduct" (citation omitted)).

Johnson would like us to ignore what the parties said and did in favor of what they wrote. The parties had a written contract, as Johnson points out, but all it discusses is "[s]ervices: [r]igging and installation of equipment." Nothing about changing the conveyor belt. The "dynamic list" from that day does not mention it either.

Even so, the written materials do not rebut the evidence of a separate verbal agreement covering the extra work Exide expected Concorp to do, which was servicing the machines it had installed and completing other maintenance tasks as

---

[2]The dissent favors sending the issue to a jury because "the bounds of the parties' agreement are unclear." *Post*, at 10. It is not at all clear that a jury could decide the question even if there were genuine issues of material fact. *See Barger v. Kan. City Power & Light Co.*, 548 S.W.3d 424, 427–28 (Mo. Ct. App. 2018). But here, there are none. Concorp's president testified that the agreement covered "whatever" needed to be done. For its part, the dissent does not point to any *specific* testimony to the contrary, and Johnson himself relies only on what Concorp's president said. *See Liberty Lobby*, 477 U.S. at 249 (requiring "*sufficient evidence favoring the nonmoving party*" to preclude summary judgment (emphasis added)). Like the parties, we are at a loss about what else there might be. *See id.* at 256 (observing that "the plaintiff" has the "burden of producing . . . evidence that would support a jury verdict").

they arose. Indeed, the record shows that much of the work that Concorp did was never placed in writing. As the Missouri Court of Appeals observed on similar facts, "the absence of a specific provision in [a written] contract" does not rule out the possibility that another agreement covered the work. *Olendorff v. St. Luke's Episcopal-Presbyterian Hosps.*, 293 S.W.3d 47, 50 (Mo. Ct. App. 2009) (applying § 287.040.1 to a contractor's employees); *see J.E. Jones*, 875 S.W.2d at 157 (holding that the contract requirement was satisfied even though the parties "accepted or declined proposals . . . on an informal basis and not in writing" because the contractor "completed the entire project pursuant to its terms, and . . . was paid accordingly"). Exactly what the evidence shows happened here.

## B.

Closer, however, is the final element, which is whether the maintenance work was performed in the "usual course of [Exide's] business." Mo. Rev. Stat. § 287.040.1; *see McCracken v. Wal-Mart Stores E., LP*, 298 S.W.3d 473, 480 (Mo. banc 2009). To qualify, the work had to be

> (1) . . . routinely done[;] (2) on a regular and frequent schedule[;] (3) contemplated in the agreement between the independent contractor and the statutory employer to be repeated over a relatively short span of time[; and] (4) . . . [the kind] requir[ing] the statutory employer to [otherwise] hire permanent employees absent the agreement.

*McCracken*, 298 S.W.3d at 480.

The first three factors merge into one overarching requirement: did the parties "clearly anticipate[] that [the] work would be needed on a regular basis"? *Busselle v. Wal-Mart*, 37 S.W.3d 839, 842 (Mo. Ct. App. 2001) (noting "a 'set' routine is [not] required"). When they have, an activity is more likely to satisfy the usual-course-of-business test. The opposite is true of "[u]nanticipated repairs, remodeling, and episodic maintenance," which are not subject to repetition "over a relatively short span of time." *Id.*

-5-

Here, Concorp employees performed on-site maintenance multiple times per week for nearly a year, even if they rarely worked on the specific conveyer belt that needed replacing that day. The type of work was routine, even if the specific task was not. *See Olendorff*, 293 S.W.3d at 50 (holding that a contractor injured during a one-time installation of height restrictors was covered because he "routinely performed [other] maintenance on structures"); *Busselle*, 37 S.W.3d at 842 (concluding that a contractor brought in to occasionally change industrial lightbulbs acted within the usual course of business); *see also DuBose v. Flightsafety Int'l, Inc.*, 824 S.W.2d 486, 490 (Mo. Ct. App. 1992) ("[R]epairs and maintenance are not inherently outside the usual course of business."). The usual-course-of-business test requires nothing more. *See Olendorff*, 293 S.W.3d at 50 (emphasizing the importance of the "*type* of maintenance work contemplated by and regularly performed" under an agreement (emphasis added)).

Both Johnson and the dissent view the test at a greater level of specificity. It is the distinct task that matters, and something as rare as changing a conveyor belt cannot be in the "usual course of [Exide's] business." *McCracken*, 298 S.W.3d at 480. For support, Johnson relies on *Nichols v. Overnight Express, Inc.*, which involved "as[-]needed" trailer repairs, 156 S.W.3d 406, 409–10 (Mo. Ct. App. 2005), and *Tullmann v. St. Louis Science Center Foundation*, in which the plaintiff only "sporadically" constructed science exhibits without "a regular and frequent schedule," 34 S.W.3d 860, 862 (Mo. Ct. App. 2001). Neither was a statutory employee.

Those cases, however, were missing something that is present here: an agreement to provide *routine* maintenance services. In *Olendorff*, for example, the Missouri Court of Appeals concluded that an even less repeatable task than changing a conveyor belt fell within the "usual course of" a hospital's business because the parties had a general contract for maintenance work. 293 S.W.3d at 49 (installing height restrictors in a parking garage). Or consider *McGrath v. VRA I Ltd. Partnership*, in which a maintenance worker injured himself while moving a water heater from a vacant apartment. 244 S.W.3d 220, 223 (Mo. Ct. App. 2008). It too

fell within the "usual course" because an agreement required the worker to complete, among other jobs, "such other maintenance and repair work as may be necessary." *Id.* at 225. The lesson is that routine work done under a contract still qualifies even if the specific task is "specialized or episodic" and would not qualify on its own. *Bass*, 911 S.W.2d at 621; *cf. Taylor v. Associated Elec. Coop.*, 818 S.W.2d 669, 671 (Mo. Ct. App. 1991) (holding that a "specialist [hired] to do a special job" did not act within the usual course of business when the task had "never been performed before").

Closely connected is the final factor, which is whether Exide would have needed "to hire permanent employees" to complete the work "absent the agreement." *McCracken*, 298 S.W.3d at 480 (citation omitted). As it happened, the company already had its own in-house maintenance team. But it assigned some routine maintenance work, including servicing and repairing recently installed machines, to Concorp. Once the agreement ended, Exide's team took over, showing the company otherwise would have used—and indeed, *did* later use—its own "permanent employees" to perform the work. *Id.*; *see DuBose*, 824 S.W.2d at 490 (explaining that permanent employees would have performed maintenance work if another party had "not been contractually obligated to do it").

\*     \*     \*

By every measure, Exide and Johnson had a statutory employer-employee relationship. *See* Mo. Rev. Stat. § 287.040.1. The consequences under Missouri law are clear: Johnson's only remedy for his on-the-job injury is a claim for workers' compensation benefits, and Exide is immune from Johnson's negligence claim. *See State ex rel. Beutler, Inc. v. Midkiff*, 621 S.W.3d 491, 493 (Mo. banc 2021) ("Under Missouri's workers' compensation laws, in exchange for providing mandatory workers' compensation coverage—without regard to fault—employers and their employees are granted immunity from civil lawsuits arising out of workplace injuries.").

III.

We accordingly affirm the judgment of the district court.

ERICKSON, Circuit Judge, dissenting.

I respectfully dissent. In my view, the record does not support judgment as a matter of law in Exide's favor. A jury could reasonably find that the work Johnson was performing at the time of his injury was not part of Exide's "usual course of business," as required to invoke immunity under Missouri law. Because that determination turns on disputed facts and competing inferences, summary judgment is inappropriate.

Missouri's workers' compensation statute provides the "exclusive remedy" for workplace injuries. Mo. All. for Retired Ams. v. Dep't of Lab. & Indus. Rels., 277 S.W.3d 670, 679 (Mo. 2009); Mo. Rev. Stat. § 287.120.2. This statute keeps injured employees from raising civil negligence actions in state court for work performed (1) "on or about" an employer's premises, (2) "under [a] contract," and (3) in "the usual course of [the employer's] business." Mo. Rev. Stat. § 287.040.1; Blanton v. Kansas City S. Ry. Co., 33 F.4th 979, 981 (8th Cir. 2022). The majority concludes that Johnson was a statutory employee under this framework. I disagree.

The record is unclear as to the third element, whether Johnson's work occurred within the usual course of Exide's business. The Missouri Supreme Court has defined "usual business" as "those activities (1) that are routinely done (2) on a regular and frequent schedule (3) contemplated in the agreement between the independent contractor and the statutory employer to be repeated over a relatively short span of time (4) the performance of which would require the statutory employer to hire permanent employees absent the agreement." McCracken v. Wal-Mart Stores E., LP, 298 S.W.3d 473, 480 (Mo. 2009) (citation omitted). This standard is "fact-driven" and "designed to exclude from the definition of statutory employee specialized and episodic work that is essential to the employer but not within the

-8-

employer's usual business as performed by its employees." <u>Barger v. Kansas City Power & Light Co.</u>, 548 S.W.3d 424, 428 (Mo. Ct. App. 2018) (citation omitted and cleaned up).

I agree with the majority that the relationship between Exide and Concorp involved both a written installation contract and an ongoing oral agreement for miscellaneous maintenance work, both of which may give rise to a statutory relationship. <u>See</u> <u>Linkous v. Kirkwood Sch. Dist.</u>, 626 S.W.3d 889, 895 (Mo. Ct. App. 2021) (recognizing the statutory-employee provision applies to written and oral contracts). However, it is unclear whether Johnson's particular assignment—replacing a conveyor belt inside an oven suspended over molten lead—was contemplated by either component. The written contract covered "[r]igging and installation services," for Exide's equipment, but not routine or preventative maintenance work. As for the oral agreement, the record shows that some tasks were assigned "on the fly." This "dynamic list" of informal tasks evolved over time, but it never included Johnson's belt replacement.

The majority recognizes these inconsistencies but relies on <u>Olendorff v. St. Luke's Episcopal-Presbyterian Hospitals</u> to state that "the absence of a specific provision in a written contract does not rule out the possibility that another agreement covered the work." 293 S.W.3d 47, 50 (Mo. Ct. App. 2009). However, <u>Olendorff</u> was decided at the motion to dismiss stage rather than at summary judgment. <u>Id.</u> at 48. Missouri courts have long held that when the terms of an oral agreement are disputed, it is for the jury to decide what the agreement was. <u>West v. Sharp Bonding Agency, Inc.</u>, 327 S.W.3d 7, 15 (Mo. Ct. App. 2010) (citation omitted).

In addition, the majority concludes there is no genuine dispute of material fact based on the Concorp president's testimony that the agreement covered "whatever" needed to be done. At the summary judgment stage, when the movant relies on witness testimony rather than documentary evidence, we scrutinize whether the testimony is "positive, internally consistent, unequivocal, and in full accord with the

documentary exhibits." <u>United States v. Real Prop. Located at 3234 Washington Ave. N., Minneapolis, Minn.</u>, 480 F.3d 841, 845 (8th Cir. 2007) (quoting <u>Lundeen v. Cordner</u>, 354 F.2d 401, 408 (8th Cir. 1966)). Here, the written agreement and documentary evidence do not support the Concorp president's characterization of the parties' agreement, and other witnesses testified to a different understanding. Because the bounds of the parties' agreement are unclear and the terms disputed, summary judgment against Johnson based on the Concorp president's testimony alone is inappropriate. <u>See</u> <u>Bonomo v. Boeing Co.</u>, 63 F.4th 736, 742 (8th Cir. 2023) (at summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party).

Even if the parties' dual agreement had contemplated the belt replacement, it is unclear whether that task was routine. According to Jonathan Boone, Johnson's co-worker, the conveyor system Johnson was working on was relatively new and had presented a number of technical issues. Boone testified modifications were necessary to address defects in the system and Exide lacked the expertise to carry them out. His testimony suggests Johnson was troubleshooting Concorp's installation rather than performing routine maintenance. That Exide reassigned maintenance tasks to its in-house team after Concorp completed installation does not necessarily end the inquiry. Missouri courts do not ask whether an employer can perform certain tasks in-house; they ask whether the specific work was essential to the statutory employer's business. <u>Barger</u>, 548 S.W.3d at 428.

A jury could reasonably conclude that Johnson was engaged in specialized installation and troubleshooting work on Concorp's behalf. If Johnson's task fell outside the usual course of Exide's business, he was not a statutory employee, and his negligence claim should proceed. Because the record contains a genuine dispute of material fact, I would reverse and remand for trial.

_____